972 F.2d 1348
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Grach ZEYTUNTSYAN, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary, HHS Defendant-Appellee.
 No. 91-55062.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 2, 1991.*
Decided July 27, 1992.
 
 Before JAMES R. BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Grach Zeytuntsyan appeals a decision of the Secretary of Health and Human Services denying him Supplemental Security Income (SSI) disability benefits. The district court granted summary judgment for the Secretary. We affirm.
 
 BACKGROUND
 
 3
 Grach Zeytuntsyan (claimant) alleges that he has been unable to work since 1978 due to stomach cancer, arthritis and nervousness. See Certified Administrative Record (CAR) at 52, 66. Dr. Magdi Gindi, his treating physician, reported on March 16, 1988 that Zeytuntsyan did not have cancer. Dr. Gindi also observed that the claimant was able to move his arms and legs and could walk without the use of assistive devices. Dr. Anna Kagan, a psychiatrist, reported that Zeytuntsyan's cerebellar function[1] and gait was within normal limits, without motor or sensory deficits. Dr. W.H. Enenstein reported that Zeytuntsyan moved freely from the sitting to the supine to an erect position without any evidence of restriction of range of motion in the lower back region in flexion and extension. Furthermore, Dr. Enenstein also concluded that Zeytuntsyan had "multiple symptomatic presentations without objective findings to confirm them." The Secretary considered the medical record[2] and denied SSI disability benefits.
 
 
 4
 An administrative hearing was held on May 12, 1989. Based on the medical reports, observation of the claimant at the hearing, the claimant's daily activities, and his ability to function and concentrate, Administrative Law Judge Waldemar J. Lach (ALJ) found that Zeytuntsyan's allegations were not credible. The ALJ found that Zeytuntsyan did not have a severe impairment, because he did not have any impairments which had more than a slight effect on his ability to perform basic work-related activities. Concluding that Zeytuntsyan was not disabled as defined in section 1614(a)(3)(A) of the Social Security Act (codified as 42 U.S.C. § 1382c(a)(3)(A) (1988)), the ALJ denied benefits.
 
 
 5
 Upon Zeytuntsyan's request for review, the Appeals Council considered additional evidence,[3] found that this evidence supported the ALJ's conclusions, and affirmed the ALJ's decision. After Zeytuntsyan filed the present action in district court on April 5, 1990, the district court granted summary judgment in favor of the Secretary on November 15, 1990.
 
 DISCUSSION
 
 6
 We review the judgment of the district court de novo. Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.1989). Decisions of the Secretary of Health and Human Services to grant or deny benefits are reviewed to determine whether substantial evidence supports the Secretary's findings and whether the Secretary applied the correct standards. Desrosiers v. Secretary, 846 F.2d 573, 575-76 (9th Cir.1988). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers, 846 F.2d at 576.
 
 
 7
 To qualify for SSI disability benefits, a claimant must prove that he is disabled. 20 C.F.R. § 416.202 (1991). The Secretary has established a five-step sequential process for determining whether a claimant is "disabled." 20 C.F.R. § 416.920(a)-(f) (1991); see generally Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (explaining the five-step evaluation process); Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir.1991) (same). At step one, disability benefits are denied if the Secretary determines that the claimant is engaged in "substantial gainful activity." § 416.920(b). At step two, the Secretary evaluates whether the claimant has a medically severe impairment "which significantly limits [his or her] physical or mental ability to do basic work activities." § 416.920(c). If the claimant does not have a severe impairment, the claimant is not considered to be disabled. If the impairment is severe, the Secretary proceeds to step three and determines whether the claimant's impairment is or is equivalent to an impairment presumed severe enough to preclude gainful work. § 416.920(d); see also 20 C.F.R. Part 404, Subpt. P, App. 1 (1991). If the impairment meets or equals one of the listed impairments, the claimant is presumed disabled. If the presumption does not apply, step four requires a determination whether the impairment prevents the claimant from performing work he or she has performed in the past. If the claimant is able to perform such past work, the claimant is not considered to be disabled. § 416.920(e). If the claimant cannot perform his or her past work, step five determines whether he or she is nonetheless able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. If the claimant cannot perform other work, he or she is entitled to disability benefits. § 416.920(f).
 
 
 8
 To satisfy step two's requirement of a severe impairment, the claimant must prove the physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The Secretary considers all symptoms,
 
 
 9
 including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms ... must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. [The Secretary] will never find that [a claimant is] disabled based on [his or her] symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms.
 
 
 10
 20 C.F.R. § 416.929. Once the claimant has produced medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc).
 
 
 11
 In reviewing the medical evidence, we recognize that the ALJ is charged with determining the credibility of medical testimony and resolving ambiguities in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). Where evidence exists to support more than one rational interpretation, we must defer to the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984). Moreover, the ALJ can disregard controverted medical opinions "by articulating 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.' " Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir.1991) (quoting Magallanes, 881 F.2d at 751). With these standards in mind, we turn now to the merits of the appeal.
 
 
 12
 Here, the ALJ resolved Zeytuntsyan's claim at step two. Addressing step one, the ALJ found that Zeytuntsyan had not engaged in substantial gainful activity since 1979. Proceeding to step two, the ALJ considered Zeytuntsyan's allegations of stomach cancer, disabling weakness, back, leg, joint and shoulder pain, and headaches, and found that he did not have "any impairment or impairments which have more than a slight effect on his ability to perform basic work-related activies [sic]." C.A.R. 14. The ALJ therefore concluded that Zeytuntsyan did not have a severe impairment. Id.
 
 
 13
 The record indicates there is substantial medical evidence to support the ALJ's findings. Based on treatments since 1980, Dr. Gindi reported that Zeytuntsyan had chronic arthritis, gastritis, otitis media and bronchitis. The ALJ, however, specifically rejected Dr. Gindi's diagnosis of arthritis on two grounds. First, as noted earlier, Dr. Gindi reported that Zeytuntsyan is able to walk without the use of assistive devices and that he can adequately move his arms and legs. Second, the ALJ pointed to Dr. Enenstein's consultative examination which contradicted Dr. Gindi's diagnosis by revealing that Zeytuntsyan's musculoskeletal system was entirely normal. That examination also indicated that Zeytuntsyan was able to move fully all major and minor joints of the upper and lower extremities and that there was no evidence of any restriction of his range of motion in the lower back region. Hence, the ALJ articulated sufficient specific reasons supported by the record for discounting Dr. Gindi's opinion that Zeytuntsyan had chronic arthritis. Because there is substantial medical evidence supporting the ALJ's finding that there was no chronic arthritis impairment, we need not reach the issue of whether Zeytuntsyan's allegations regarding the severity of the arthritic pain were credible. See Bunnell, 947 F.2d at 345.
 
 
 14
 The other physicians' reports indicated minor health problems. Dr. Kagan reported some tremor on the right upper extremity. Dr. Yetenekian also reported mild motoric tremors without any signs of organicity.[4] None of the medical reports, including those of Dr. Gindi, his treating physician, however, found Zeytunstyan to be physically disabled. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982) (claimant must not only show that an impairment exists, but that such impairment precludes the claimant from engaging in all substantial gainful activity).
 
 
 15
 Zeytuntsyan also complained about nervousness and depression. His psychological and psychiatric reports, however, fail to indicate an underlying impairment which may cause such symptoms. Dr. Kagan reported that Zeytuntsyan's affect was appropriate, that there was no disassociation of affect and content of thought, that he was oriented for time, place and identity, and that he showed no signs of depression or suicidal ideation. Dr. Laird Cagan reported that Zeytuntsyan's motor activity and speech were normal, that his thought was logical and coherent, that his memory was intact, and that his concentrating ability was unimpaired. Additionally, his judgment and insight were fair. Dr. Yetenekian reported that Zeytuntsyan was functioning within the normal range of overall cognitive intelligence.
 
 
 16
 Dr. Kagan did report that Zeytuntsyan showed some signs of memory deficiency regarding recent events. Dr. Kagan diagnosed Zeytuntsyan as suffering from an adjustment disorder. Dr. Cagan noted a dysthymic disorder with possible somatization[5] and reported that the claimant's moderate symptoms result "from the stress of moving to a new culture." CAR 139. Dr. Yetenekian reported that Zeytuntsyan suffered from depression, anxiety, and an inability to concentrate, partly due to cultural and linguistic limitations. In sum, the various psychological or psychiatric evaluations diagnosed Zeytuntsyan as depressed due to his difficulty adjusting to a new culture. None of these reports, however, found that such depression restricted his ability to work, thereby rendering him disabled.
 
 
 17
 The nonmedical evidence in the record also supports the ALJ's conclusion. Zeytuntsyan's failure to seek treatment supports a finding of non-disability. Fair, 885 F.2d at 603. Since his application for SSI disability benefits on March 1, 1988, until the decision of the Appeals Council on February 22, 1990, he has submitted evidence that he sought treatment for his physical disabilities only once from Dr. Gindi for low back tenderness, on March 23, 1988. Additionally, Zeytuntsyan has not sought any treatment for his nervousness despite Dr. Cagan's referral to the Hollywood Mental Health Clinic.
 
 
 18
 Zeytuntsyan's testimony that he drives, walks and performs minor household errands further supports the ALJ's conclusion. "[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Id. Hence, evidence regarding Zeytuntsyan's daily activities indicated that his level of pain would not preclude him from undertaking gainful employment.
 
 
 19
 The dissent apparently believes that Bunnell established a test for evaluating whether a claimant is "disabled" and that about pain without objective symptoms entitles a claimant to disability benefits. We respectfully disagree. Bunnell established a two-part inquiry for evaluating pain, see Bunnell, 947 F.2d at 343, not whether a claimant has a medically severe impairment and thus, is disabled. The wrong which Bunnell sought to remedy was the situation in which an ALJ found that the claimant suffered from an impairment, yet nonetheless denied benefits solely on the basis that the degree of pain alleged was not supported by objective medical evidence. See, e.g., Bunnell, 947 F.2d at 342-43 (ALJ found a "severe impairment" yet rejected claimant's pain testimony); Cotton v. Bowen, 799 F.2d 1403, 1407, 1408 (9th Cir.1986) (ALJ found an impairment of arthritis and left leg weakness, yet "the only reason given by the ALJ for finding Cotton not disabled was that her subjective complaints were disproportionate to the medical evidence."). Thus, Bunnell teaches us that "the adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." 947 F.2d at 346-47 (emphasis added).
 
 
 20
 We fully agree with our dissenting colleague that, under Bunnell, medical evidence is not required to establish the severity of a claimant's pain. Here, however, the ALJ discredited Zeytuntsyan's allegations of pain because there was no objective evidence of a disability to support it. After carefully summarizing and evaluating all of the medical reports the ALJ found "the medical evidence does not establish that the claimant has an impairment or impairments which have more than a slight effect on his ability to perform basic work related activities." ALJ Decision at 3-4. Unlike the adjudicators in Bunnell or Cotton, the ALJ never found that the prerequisite underlying medical impairment existed. His findings question the existence of the alleged impairments of stomach cancer, arthritis, and nervousness, based primarily on the total lack of objective medical evidence.[6] Thus, the only musculoskeletal examination for signs of arthritis found no abnormality. The legal requirement for establishing pain should not be confused with the requirement for establishing a medically severe impairment. To be considered "disabled" and thus eligible for disability benefits, the claimant must establish at step one, that he is not engaged in "substantial gainful activity," and at step two, that he "has a medically severe impairment or combination of impairments," Yuckert, 482 U.S. at 140-41 (quoting 20 C.F.R. § 416.920(b), (c)) (emphasis added). "If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied." Id. at 141 (emphasis added).
 
 
 21
 Here the predicate for finding a disabling degree of pain was lacking. Zeytuntsyan failed to establish the first prong of the Bunnell test, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged ..." Bunnell at 344.
 
 
 22
 Given that none of the medical reports, including that of his treating physician, described Zeytuntsyan as disabled or suggested that his depression prevented him from working, there is substantial evidence to support the ALJ's findings and his decision to deny SSI disability benefits. In his decision, the ALJ accurately summarized the medical reports and set forth his rationale for denying disability benefits. He explained the basis for his conclusions by referring to each of the claimant's allegations and the corresponding medical evidence which contradicted or failed to support such allegations. Thus, the ALJ made the required specific findings to support his conclusion.[7]
 
 CONCLUSION
 
 23
 Substantial evidence supports the ALJ's conclusion that Zeytuntsyan's physical and mental conditions are not disabling. Accordingly, the district court's judgment granting the Secretary's motions for summary judgment is AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 24
 I would reverse the Secretary's decision for two reasons. First, I believe that the ALJ's opinion conflicts with our decision in Bunnell v. Sullivan, 947 F.2d 341 (9th Cir.1991) (en banc). Second, I believe that the Secretary's determination is not supported by substantial evidence. Accordingly, I respectfully dissent.
 
 I.
 
 25
 Because the ALJ made his findings prior to our decision in Bunnell v. Sullivan, he thought it necessary that a claimant's pain must be manifested by objective symptoms in order to qualify for SSI disability benefits. That fact is clearly evident in the ALJ's opinion: the basis for his dismissal of Mr. Zeytuntsyan's allegations of pain (which were supported by the diagnoses of several doctors, including his treating physician) was contained exclusively in the following three sentences:
 
 
 26
 "The claimant alleges pain. However, severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite, muscular atrophy, muscular spasm, prolonged bedrest or adverse neurological signs. In the case at hand, no such signs exist."
 
 
 27
 In Bunnell, we explicitly rejected the view that objective manifestations were necessary. See id. at 343-48. For that reason alone, I would remand this case for reconsideration in light of Bunnell. We are not free to affirm the ALJ's determination on a different basis. See SEC v. Chenery Corp., 318 U.S. 80, 87 (1943).
 
 
 28
 In addition, the ALJ's decision improperly substituted his own judgment of how pain manifests itself for that of the physicians who testified at the hearing. There was no evidence whatsoever in the record that severe pain necessarily manifests itself in the manner described by the ALJ. His decision to rely upon a basis unsupported by the evidence requires a remand. See Rodriguez v. Bowen, 876 F.2d 759 (9th Cir.1989). Moreover, the ALJ's rationale cannot constitute "substantial evidence", nor does it provide a "clear and convincing, fully reasoned and legitimate basis" for rejecting the diagnosis of Mr. Zeytuntsyan's treating physician. See infra at 5-8 (describing treating physician's testimony). As we said in Rodriguez v. Bowen, 876 F.2d 759 (9th Cir.1989):
 
 
 29
 The ALJ may disregard the treating physician's opinion, but only by setting forth 'specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.' Cotton v. Bowen, 799 F.2d, 1403, 1408 (9th Cir.1986). This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. Id. Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be 'clear and convincing.' Montijo [v. Secretary of Health and Human Services], 729 F.2d [599,] 601 [ (9th Cir.1984]."
 
 
 30
 Id. at 761-62. The ALJ's opinion does not come close to meeting the requirements described by that case. In the absence of a properly reasoned opinion supporting his decision, the ALJ's determination must be vacated and remanded. We cannot now manufacture a proper opinion for him.
 
 II.
 
 31
 Even were we free to rewrite the ALJ's opinion, insert in it the specific legitimate reasons required, and modify the analysis which underlies his conclusion so as to conform his decision to the subsequently-adopted Bunnell doctrine, the record would not permit us to do so. Properly interpreted in light of Bunnell, the ALJ's decision is not supported by substantial evidence.
 
 A.
 
 32
 The majority bases its result on the conclusion that Mr. Zeytuntsyan's pain was not "severe". See Disposition at 6, 10-12.[1] In doing so, the disposition conflates two separate inquiries and conflicts with the decision of the en banc court in Bunnell. As applied to the facts of this case, Bunnell requires that we determine: (1) whether medical evidence indicates the presence of a condition that could cause pain to Mr. Zeytuntsyan, and (2) whether Mr. Zeytuntsyan's pain is sufficiently severe to qualify him as "disabled". The former requires objective medical evidence: the latter does not.
 
 
 33
 The issue is not whether the medical evidence, standing alone, establishes that Mr. Zeytuntsyan's pain "had more than a slight effect on his ability to perform basic work-related activities". Disposition at 3; see also id. at 5 (requiring "medical evidence" in order "[t]o satisfy step two's requirement of a severe impairment" and stating that "the claimant's own statement of symptoms alone will not suffice"). That position--that medical evidence must establish the "severity" of the claimant's pain--was repeatedly, explicitly, and unambiguously rejected in Bunnell. See Bunnell, 947 F.2d at 343-48; see also id. at 347 (rejecting assertion that "an adjudicator c[an] reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain"). Under Bunnell, the medical evidence need show only the existence of a condition that could cause pain: if that requirement is met, an ALJ cannot--as he did here--reject a claimant's allegations of pain solely because "objective" medical evidence does not establish that the pain is "severe". See supra at 2 (describing the ALJ's findings).
 
 
 34
 The only medical evidence that is required is evidence that supports a conclusion that the claimant suffers from a medical condition that might cause pain. See Stewart v. Sullivan, 881 F.2d 740, 743 (9th Cir.1989). Mr. Zeytuntsyan has done so here: his medical evidence establishes that he has arthritis, which is a condition that can cause pain. See infra at ---. Contrary to the majority's assertions, see Disposition at 10-11, Mr. Zeytuntsyan's pain (even if "excess" pain) can constitute his disabling "impairment" or "condition" even if he would not be entitled to benefits on the basis of his arthritis (without the resulting pain) alone. See, e.g., Bunnell, 947 F.2d at 342-47; Stewart, 881 F.2d at 743; see generally Annotation, Pain as "Disability" Entitling Insured to Disability Benefits Under § 103 of the Social Security Act (42 U.S.C. § 423), 23 A.L.R.3d 1034 (1969 & 1991 Supp.). Although the majority disposition asserts that it comports with our holding in Bunnell, see Disposition at 10-12, its holding that the medical evidence must establish a "severe" physical condition in order for pain to qualify as a disabling condition dramatically deviates from the requirements of that case.
 
 B.
 
 35
 Properly analyzed, it is clear that substantial evidence does not support the ALJ's ruling. The first issue in the two-part inquiry required in this case is whether the medical evidence establishes an underlying condition that could cause pain.[2] Clearly, it does. Dr. Gindi, Mr. Zeytuntsyan's treating physician, diagnosed chronic arthritis and continuing pain, and prescribed numerous painkillers for his condition. That diagnosis was made repeatedly, consistently, and is supported by the diagnoses of several other doctors and the testimony of Mr. Zeytuntsyan.[3] See infra at 7-8. Because Dr. Gindi is Mr. Zeytuntsyan's treating physician, his diagnosis is entitled to great deference. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) ("We afford greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.' " (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.1987)); Rodriguez v. Bowen, 876 F.2d 759, 761 (9th Cir.1989).[4]
 
 
 36
 Despite the failure of a single individual to testify that Mr. Zeytuntsyan does not have arthritis, my colleagues find that substantial evidence supports the conclusion that no such medical condition exists.[5] The majority instead discounts Dr. Gindi's diagnosis as well as Mr. Zeytuntsyan's excess pain testimony almost exclusively because Mr. Zeytuntsyan has the ability to walk, move his arms and legs, and do minimal household chores. See Disposition at 2, 7, 9-10. Those facts in no way establish that he does not have arthritis, a condition that is in no way incompatible with such limited physical efforts.[6] Moreover, a claimant need not be totally disabled and in a wheelchair in order to receive disability benefits: the fact that Mr. Zeytuntsyan can walk in no way demonstrates that he is capable of performing full-time work, nor does it refute Dr. Gindi's diagnosis that Mr. Zeytuntsyan suffers from chronic arthritis that could cause him to suffer continuing pain. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.1984) (ordering award of benefits for constant pain despite claimant's ability to cook meals and wash dishes).[7] People with arthritis can walk while still being disabled and eligible for SSI benefits: that seems to me to be a fairly elementary proposition.
 
 
 37
 The majority also refers to Dr. Kagan's report that Mr. Zeytuntsyan's gait was within normal limits as support for the Secretary's decision. See Disposition at 2. Dr. Kagan is a psychiatrist: her self-proclaimed "limited neurological examination" is entitled to little weight as a refutation of the diagnosis of chronic arthritis and pain made by Mr. Zeytuntsyan's treating physician. Moreover, Dr. Kagan explicitly diagnosed Mr. Zeytuntsyan as having rheumatism, "[a]n indefinite term applied to various conditions with pain or other symptoms which are of articular origin or related to other elements of the musculoskeletal system." Thomas Stedman, Stedman's Medical Dictionary 1232 (5th Unab. Lawyers' Ed.1982). Indeed, articular rheumatism is arthritis. See id. Dr. Kagan's diagnosis in no way detracts from--indeed, it supports--Dr. Gindi's diagnosis.
 
 
 38
 The final authority relied upon by my colleagues is a report from Dr. Enenstein that stated that he watched Mr. Zeytuntsyan go from a sitting position to a standing position without apparent difficulty and that Dr. Enenstein's brief contact with Mr. Zeytuntsyan did not demonstrate to him an objective medical basis for his complaints. See Disposition at 2, 7. Dr. Enenstein's comments do not constitute "substantial evidence" in light of the unrefuted diagnosis of Dr. Gindi, Mr. Zeytuntsyan's treating physician. See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir.1984) (finding no substantial evidence when doctor's diagnosis did not directly refute treating physician's diagnosis); see also Rodriguez, 876 F.2d at 762 n. 8 (citing Kail ). Moreover, Dr. Enenstein's statements were tentative at best: he examined Mr. Zeytuntsyan only once and explicitly noted that his diagnosis was indefinite and that he would need to review Dr. Gindi's records and perform additional tests in order to make a definitive diagnosis. Cf. Magallanes, 881 F.2d at 751 ("To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so."). Furthermore, Dr. Enenstein's tentative diagnosis was not only refuted by Dr. Gindi, but also by Dr. Yetenekian, who evaluated Mr. Zeytuntsyan on July 26, 1989 and noted that he walked with a cane, dragged his left leg behind his right, evidenced "significant motoric limitations ... due to his physical problems", exhibited "mild motoric tremors", and noted that "[h]is gross motor functions have also been limited, due to physical problems, [and] he has not been able to bend or perform activities that are physical[ly] strenuous." Contrary to the assertion of the majority, Dr. Enenstein's tentative and indefinite comments in no way "contradict[ ] Dr. Gindi's diagnosis", Disposition at 7, and do not provide a sufficient basis for rejecting the detailed and specific diagnosis of Mr. Zeytuntsyan's treating physician and others. See Rodriguez, 876 F.2d at 761-62 (holding that the diagnosis of a treating physician may be rejected only by setting forth specific, legitimate reasons for doing so that are "clear and convincing" and are contained in a detailed summary and analysis of the facts and conflicting clinical evidence).
 
 III.
 
 39
 Finally, I believe that the record does not contain substantial evidence to support a finding that Mr. Zeytuntsyan's pain is not severe.[8] Mr. Zeytuntsyan testified that he suffered nearly constant pain, used painkillers regularly, could dress only slowly and (even then) in pain, and could not perform regular work due to pain upon movement and lack of strength. His testimony was supported by a clear medical diagnosis of arthritis that could be the underlying cause of his pain, the fact that he repeatedly visited Dr. Gindi for complaints about pain, and the fact that Dr. Gindi felt that painkillers were necessary for his continued medical well-being. Mr. Zeytuntsyan's testimony was wholly unrefuted; not a single individual testified that he did not suffer pain or that he was exaggerating. Nor did the ALJ refer to any events or occurrences that shed doubt on Mr. Zeytuntsyan's credibility, or suggest that his performance on the witness stand in any way supported a conclusion that he was being untruthful. The sole indication that Mr. Zeytuntsyan might not suffer constant, totally immobilizing pain is the fact that he can walk and sit upright. That fact is not "substantial evidence" that his pain is not severe and that it does not prevent him from engaging in gainful employment. See Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir.1984).
 
 
 40
 * * *
 
 
 41
 * * *
 
 
 42
 The Secretary did not apply the correct legal standards in his determination of whether Mr. Zeytuntsyan was disabled: that finding cannot stand. Moreover, based upon the record as a whole, I do not believe that the Secretary's determination was supported by substantial evidence. Accordingly, I would reverse the Secretary's decision and remand for the payment of the SSI disability benefits to which Mr. Zeytuntsyan is entitled. See Rodriguez, 876 F.2d at 763 (awarding benefits on appeal).
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 This function relates to the coordination of muscles and the maintenance of bodily equilibrium. Schmidt's Attorney's Dictionary of Medicine (Matthew Bender 1991)
 
 
 [2]
 The Secretary initially evaluated two reports: a report by Dr. Gindi dated 3/28/88 (CAR 92-93, 121-125) and a report by Dr. Kagan, dated 4/19/88 (CAR 126-128). Upon claimant's request for reconsideration, the Secretary evaluated two additional reports: a report by Dr. Enenstein dated 11/2/88 (CAR 129-136) and a psychiatric evaluation by Dr. Laird P. Cagan dated 11/17/88 (CAR 137-139)
 
 
 [3]
 The Appeals Council evaluated a report from Dr. Avedis T. Yetenekian, a psychologist, dated July 26, 1989
 
 
 [4]
 "Without any signs of organicity" means that the tremors are not caused by the structure of an organ. See Schmidt's Attorney's Dictionary of Medicine
 
 
 [5]
 Dysthymia is defined as a disorder of the mood, less severe than a major depression, marked by a loss of interest in activities previously enjoyed. Somatization is the conversion of anxiety into physical disorder or symptoms. Schmidt's Attorney's Dictionary of Medicine
 
 
 [6]
 The ALJ also relied on the lack of treatment for Zeytuntsyan's alleged nervousness, as a basis for finding no impairment of nervousness. See C.A.R. at 13
 
 
 [7]
 Contrary to Zeytuntsyan's contention, the record was substantially developed by the Secretary and was sufficient to enable the ALJ to make an informed decision regarding the claimant's eligibility
 
 
 [1]
 But see Disposition at 7 ("Because there is substantial medical evidence supporting the ALJ's finding that there was no chronic arthritis impairment, we need not reach the issue of whether Zeytuntsyan's allegations regarding the severity of the arthritic pain were credible."). My colleagues seem to believe that Mr. Zeytuntsyan's arthritis must be "severe" in order to establish his eligibility for benefits. They are incorrect. All that is required is that he have arthritis (regardless of its medical "severity") that causes him severe pain: it is the pain, not the arthritis itself, that is "severe" and precludes Mr. Zeytuntsyan from working. The undisputed arthritis condition coupled with the severe pain constitutes his disabling condition. See also infra at 4-___
 
 
 [2]
 The question of whether the resulting pain is "severe" or involves "excess pain" is resolved in step two, not step one. Step two is mandated by the fact that an individual's response (including pain) to a particular medical condition is highly subjective. For example, arthritis that is classified as medically "slight" may nevertheless cause overwhelming ("excess") pain to a particular individual diagnosed with that condition. For that reason, the underlying medical condition need not be established to be medically "severe" in order to qualify for benefits on the basis of disabling pain. See Stewart, 881 F.2d at 743 (noting that even if medical evidence does not indicate that the medical impairment "would normally produce the claimed pain", disability on the basis of pain can still be established "[i]f there are objective medical findings which establish a medical impairment that would normally produce some amount of pain, but the claimant testifies that she suffers more pain than would be expected ("excess pain")) (emphasis in original)
 
 
 [3]
 Mr. Zeytuntsyan has consistently contended that he is unable to work due to his arthritis and the resulting pain, and personally testified to his ability to dress himself only slowly and in pain as well as his daily use of painkillers
 
 
 [4]
 That rule is especially applicable here given that Dr. Gindi has conducted over 27 separate examinations of Mr. Zeytuntsyan
 
 
 [5]
 In doing so, my colleagues fail to mention the requirement that the Secretary's determination in that regard must be "clear or convincing" or explain how or if that requirement is met here
 
 
 [6]
 It is important to remember that because only the existence of a medical condition is at issue in step one--not Mr. Zeytuntsyan's allegations regarding the severity of the pain--the only relevant inquiry is whether he has arthritis, not whether it is medically "severe" or itself physically debilitating in the absence of the resultant pain. See supra at ___-___
 
 
 [7]
 My colleagues also find support for their result in the assertion that Mr. Zeytuntsyan has failed to seek treatment since his application for SSI benefits. See Disposition at 9. No party has asserted or alleged that fact, and Mr. Zeytuntsyan is under no obligation whatsoever to provide evidence that he has sought additional treatment since that time. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989), cited by my colleagues, holds only that a failure to seek treatment can be viewed as evidence to support a finding of non-disability if that failure has been affirmatively established by the Secretary and the claimant has failed to explain why that is the case. See id.; see also id. (noting that "there are any number of good reasons for not [seeking treatment]"). The majority's assertion that Mr. Zeytuntsyan is required to prove that he has sought treatment since he applied for SSI benefits is no more justifiable than a previously unannounced requirement that he prove that he has not "run[ ] [a] marathon[ ]", id., since that time either
 
 
 [8]
 The majority finds conclusive the fact that "none of the medical reports" explicitly "found Zeytuntsyan to be physically disabled" or concluded that his pain was so severe as to prevent him from working. Disposition at 7-8. The majority's requirement that "medical reports" establish that the pain was sufficiently severe to preclude gainful employment is another example of the conflict between the majority's views and the holding in Bunnell