**Jim ERICKSON, Plaintiff–Appellant,**

v.

**Donna SHALALA,\* Defendant–Appellee.**

**No. 92–55882.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1993.

Decided Nov. 16, 1993.

---

\* Donna Shalala has been substituted for her predecessor in office, Louis W. Sullivan, pursuant to Federal Rule of Appellate Procedure 43(c)(1).

The district court affirmed the Administrative Law Judge's ("ALJ") denial of Erickson's application for disability benefits. The ALJ's denial was based upon a finding that Erickson was capable of performing light work. We reverse and remand for the payments of disability benefits.

## I. BACKGROUND

Plaintiff-appellant Jim Erickson is a 34–year–old husband and father of three children. He has a high-school education and was a carpenter for 12 years. During that time, he also manufactured mobile homes, worked as a handyman, painted, hung drywall, and worked as a cement laborer.

In December 1988, Erickson was hospitalized after a three-month history of chronic coughing, rapid weight loss, and increased symptoms of shortness of breath. He was diagnosed with pulmonary sarcoidosis, "a debilitating pulmonary disease." Pulmonary sarcoidosis involves the thickening of the lung tissues, which stiffens the lungs and makes it more difficult to transfer oxygen into the lungs. Its exact cause is unknown, and only one-third of patients with pulmonary sarcoidosis ever improve over time.

As a result of his illness, Erickson developed lesions on his fingers, suffered from increased shortness of breath, became easily exhausted, experienced episodic dizzy spells, suffered from hot flashes, and even passed out on occasion. Almost one year after he was first hospitalized, Erickson wrote: "My breathing is bad *all the time* and worse at night. . . . It is *all the time* and [it] isn't getting better." [1] Erickson was eventually laid off by his employer. Although he has looked for work since then, Erickson has been unable to find an employer who is willing to accommodate his lung condition.

Robert Hoad, of counsel, Thomas Garrett Roche, Ernecoff & Roche, San Diego, CA, for plaintiff-appellant.

Donna Wade Anderson, Dept. of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: REINHARDT, T.G. NELSON, Circuit Judges, and FRANK A. KAUFMAN, Senior District Judge.**

REINHARDT, Circuit Judge:

Jim Erickson appeals the district court's grant of summary judgment in favor of the Secretary of Health and Human Services.

## II. PROCEDURAL HISTORY

On August 1, 1989, Erickson filed an application for Disability Insurance and Supple-

---

** The Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation.

1. At the time of the hearing in June 1990, Erickson was taking 40 mg of Prednisone each day for his illness, down from a high of 60 mg and up from a low of 0 mg. Erickson's medical records show that his condition fluctuated dramatically. As of October 1989, Erickson's vital capacity was only 61 percent of normal.

mental Security Income benefits ("Benefits"). His application was denied by the Social Security Administrator. On December 19, 1989, Erickson's examining physician, Dr. James Schibanoff, M.D., wrote a letter urging the Administrator to reconsider. Dr. Schibanoff wrote: "In my opinion, due to the severity of his symptoms, Mr. Erickson would clearly be unable to perform the heavy manual labor required in this line of work." Upon reconsideration, however, Erickson's application was again denied.

Erickson then requested a hearing before an Administrative Law Judge ("ALJ"). On June 21, 1990, the ALJ held a hearing at which Erickson, Dr. Richard Schillaci, M.D. (a non-examining medical expert), and Dr. Robert Metcalf, Ph.D. (a vocational expert) testified. During the hearing, the ALJ asked Dr. Schillaci whether anything in Erickson's *pulmonary function test* indicated that he would be unable to perform light work.[2] Dr. Schillaci said there was not. However, the ALJ abruptly cut off Dr. Schillaci when he began to testify about the possibility that *other effects* of pulmonary sarcoidosis might prevent Erickson from performing light work. After Dr. Schillaci stepped down, Dr. Metcalf testified that Erickson retained the residual capacity to perform light work. However, Dr. Metcalf's assessment was dependent upon Erickson's ability to "bluff" his way into a job and to take random breaks whenever he felt a dizzy spell approaching.[3]

On August 28, 1990, the ALJ issued his decision. Although he found that Erickson suffered from a severe physical impairment that precluded him from performing any of his past relevant work, the ALJ found that Erickson had the residual capacity for "light work" as defined by HHS regulations. Ac-

cordingly, Erickson was denied his disability benefits. The decision became final on May 21, 1991, when the Appeals Council adopted the ALJ's findings.

On April 13, 1992, the district court granted summary judgment against Erickson based on the ALJ's findings. The court based its decision largely on its belief that all the experts had agreed that Erickson could perform light work. The court was clearly uncomfortable with its decision, however. During the hearing, it noted repeatedly that Erickson was going to be "very difficult to employ" and described him as "almost unemployable." The court remarked that "let's hope that the [Americans with Disabilities Act] is operative because, if it isn't, he's going to have a hard time getting a job." The court even instructed Erickson's attorney to "keep track of him" because "he doesn't have to get much worse before he will qualify for disability." The court concluded that "it was a close call." Erickson timely filed a Notice of Appeal on June 5, 1992.

## III. ANALYSIS

### A. HHS Regulations.

■ HHS regulations require that disability claims be evaluated according to a five-step procedure. *See* 20 C.F.R. §§ 416.920(b) to 416.920(f) (1993). In steps one through four, the claimant must demonstrate that he has a severe impairment and that he cannot perform his previous job. Here, the ALJ properly found that Erickson had a severe impairment and that his illness was sufficiently serious as to prevent him from performing his previous job.

Once the claimant has met the above requirements, the burden shifts to the govern-

---

2. For excerpts of the relevant testimony from the hearing, see notes four, five, and eight below.

   HHS regulations define "light work" as follows:

   (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b) (1993).

3. During the hearing, Erickson thought that he could "probably" work for a 7–Eleven if he gave it his "best shot" and if he could "handle it." However, this was qualified by Erickson's other testimony that he could stand or walk for no more than six hours a day, and only then "off and on."

ment to demonstrate that he can engage in other types of substantial gainful work that exist in the national economy. *See, e.g., Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir.1984). Here, the ALJ found that Erickson was able to perform "light work" as defined by HHS regulations. 20 C.F.R. 404.-1567(b); *supra* note 2. Accordingly, he found that Erickson was ineligible for disability benefits. It is this finding that Erickson challenges.

### B. Discussion of the Evidence.

■ The district court ruled against Erickson because it erroneously believed that "all of the doctors agree that the Plaintiff can handle light work." In fact, there is no evidence in the record that Erickson is capable of performing light work, and *none* of the medical experts so testified.

*1. Examining Physicians.* Neither of Erickson's two examining physicians ever found him capable of performing light work. They only made findings relating to Erickson's ability to perform his *past relevant work*. For example, Dr. James Schibanoff (Erickson's treating pulmonary specialist) found that Erickson was "unable to perform any of his *past relevant work*." Similarly, Dr. Eva Abbo, M.D., an internist, reported that Erickson felt that he was "unable to perform the *heavy manual labor required at the construction site*." She concluded that "[t]he patient appears to be a reliable historian." In neither case did the examining physician volunteer or the government inquire as

to whether he or she believed that Erickson was capable of handling light work.

*2. Non–Examining Medical Expert.* The non-examining doctor also did not find that Erickson was capable of performing light work. During the hearing, Dr. Schillaci was asked whether anything *in the breathing test* demonstrated that Erickson was not capable of lifting up to 20 pounds and standing or walking for eight hours. He answered no.[4] Similarly, Dr. Schillaci was asked whether there was anything about the disease that would prevent Erickson from standing for an eight hour day. He answered no "unless," but was not permitted to finish his answer.[5] Moreover, Dr. Schillaci was never asked whether there was anything about *Erickson's condition as a whole* that would prevent him from performing light work. For example, Dr. Schillaci was never asked whether Erickson's *other symptoms* relating to pulmonary sarcoidosis (for example, exhaustion due to lack of oxygen or dizzy spells due to hyperventilation) might prevent him from engaging in light work. In fact, the ALJ abruptly cut off the medical expert's testimony just as he might have mentioned that very possibility.[6]

■ We conclude that the ALJ erred by focusing solely on Erickson's test results and on his disease. The ALJ must consider *all factors* that might have a "significant impact on an individual's ability to work." *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir.), *relief modified*, 859 F.2d 1396 (1988).

---

4. The crucial testimony about Erickson's ability to perform light work was as follows:
   ALJ: Is, is the breathing, *the Pulmonary Function test* in this case, is there anything in *the Pulmonary Function test* that says that this man can't stand or walk around for eight hours, or lift 20 pounds occasionally?
   MA: No, sir.
   ALJ: Or 10 pounds frequently?
   MA: No, sir.
   ALJ: Anything that says he can't sit?
   MA: No, sir.
   ALJ: No, all right.
   A pulmonary function test measures a patient's existing lung capacity as a percentage of the predicted normal capacity.

5. *See* text *infra* note 6.

6. The exchange was as follows:

ALJ: Let me get into this question. If the claimant says as he has, that he has—that he doesn't think he can stand for an eight hour day, would it be reasonable medical probability, to assume that, that is consistent with his diagnosis of Sarcoidosis and the treatment for it. Would that—
   MA: That, that he couldn't stand for an eight hour—
   ALJ: He says, he says he can't stand—
   MA: No, sir. There's nothing about Sarcoidosis that *unless what is demonstrated that there clearly is*—
   [interruption]
   ALJ: Is, is the breathing, the Pulmonary Function test in this case, is there anything in the Pulmonary Function test that says that this man can't stand or walk around for eight hours, or lift 20 pounds occasionally? . . . .

These factors may include side effects of medications as well as subjective evidence of pain. *See id.* In this case, the non-examining medical expert did not consider whether Erickson's condition *as a whole* would interfere with his ability to perform light work. Because the expert focused solely on a single test and a single disease, he failed to take into account other significant factors such as fatigue due to a lack of oxygen and dizzy spells due to hyperventilation. Under *Varney,* the ALJ's failure to consider factors other than the pulmonary function test and the disease itself is in itself reversible error. *Cf. Barney v. Secretary of HHS,* 743 F.2d 448, 453 (6th Cir.1984) (holding it improper for the ALJ to assess the claimant's condition in a piecemeal fashion). Thus, the non-examining medical expert's testimony does not constitute a finding deserving of any weight with respect to Erickson's ability to do light work.[7]

■ *3. Vocational Expert.* Finally, the vocational expert did not properly find that Erickson was capable of performing light work. Dr. Metcalf's testimony was based upon the improper assumption that Erickson would "bluff"—that is, lie—in order to obtain a job in the first place.[8] He analogized Erickson's case to that of an individual who suffered from epilepsy but who was willing and able to conceal the fact of his disorder from his employer. This analysis flies in the face of the regulations, the whole point of which is to require the government to demonstrate that the claimant can be hired *as he is. See Gallant,* 753 F.2d at 1456 ("[A] hypothetical question should set out all of the claimant's impairments." (internal quotes omitted)). We cannot find that a person is able to perform jobs that are available in the economy if the only way he can get those jobs is to lie to his prospective employer. The expert also based his testimony upon the assumption that Erickson could find a job that would permit him to take random breaks throughout the day whenever a dizzy spell occurred. As the district court pointed out, this is highly unlikely. Most light-work jobs—ranging from cashier to security guard to packer to assembly line worker—require a *continuous presence;* one cannot simply abandon his post or duties for several minutes without seriously disrupting his job.[9]

---

7. In any event, "[t]he non-examining physicians' conclusion, *with nothing more,* does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir.1990) (emphasis added).

   Here, the ALJ relied solely upon the non-examining medical advisor's opinion that, based upon his pulmonary function test, Erickson was capable of performing light work. Neither examining doctor reached the same conclusion. Under *Pitzer,* the advisor's opinion "does not constitute substantial evidence."

8. The crucial exchange between the judge (ALJ) and the vocational expert (VE) was as follows:

   ALJ: All right. I, I am concerned about this aspect Mr., Dr. Metcalf, the dizzy spells that he describes. How, how would he handle that at work? How would it be handled at work?

   VE: Well, if the dizzy spells last three to five minutes, then he'd have to, I'd assume, sit down or lay down. Stay away from heights and moving dangerous machinery, as Dr. Schillaci—

   ALJ: Uh-huh.

   VE: —stated. If he was totally incapacitated he would, I would assume, have to talk to his employer about that, and have an understanding.

   ALJ: *If he were able to bluff that through without anybody knowing it. It wouldn't have any effect at all, would it?*

   VE: *No.* If he were able to just feel one coming on, and take a break and let it pass, then there are people who function in the work place like that. If it were something that, that came on sudden, unexpectantly [sic] and was totally incapacitating to at a point where he fell down or something, then that would be a problem.

   ALJ: All right. But there are people who do work with the same or worse conditions?

   VE: *Well, an example would be somebody who has seizure disorder, petit mal, who doesn't tell their employer, and are able to sustain employment.*

   ALJ: At that moment one could take a break? I don't mean an extended break, but a brief break, or—

   VE: Yes.

   ALJ: —bathroom, or sit down, or just sit it out for a moment.

   VE: Yes.

   ALJ: It's not desirable, but it's overcomeable, is that reasonable?

   VE: That's, yes, that's correct.

9. In any event, the vocational expert testified that if Erickson "fell down or something, then *that would be a problem.*" As noted earlier, Erickson has passed out as a result of his illness. Accordingly, the ALJ should not have concluded that Erickson could perform light work on the basis of the vocational expert's testimony.

*4. Summary.* In sum, we hold that the government failed to meet its burden of proving that Erickson is capable of doing light work. There is simply *no* evidence to that effect in the record. Neither of Erickson's two examining physicians made such a finding. The non-examining physician gave only a partial answer to a question on this subject. He was asked only about a single diagnostic test and a single disease and was not permitted to finish his answer regarding Erickson's overall capabilities. The vocational expert improperly based his finding on an assumption that Erickson would be able to "bluff" his way past his prospective employers by concealing the truth from them. Accordingly, there is insufficient evidence in the record to support a finding that Erickson is capable of performing light work.

In fact, the only evidence in the record shows that Erickson *cannot* perform light work. The vocational expert testified that individuals who "fell down or something" are unable to perform light work. As noted earlier, Erickson falls down as a result of his disease. The medical records and Erickson's own testimony also strongly support the conclusion that he cannot perform light work.

### C. Remedy.

■ The decision to remand the case for additional evidence or simply to award the benefits is within the discretion of the court. *Stone v. Heckler,* 761 F.2d 530, 533 (9th Cir.1985). Because the case presents us with a full record that supports the conclusion that Erickson is disabled, we need not remand for further proceedings. *See, e.g., Pitzer,* 908 F.2d at 506; *Varney,* 859 F.2d at 1401; *Gallant,* 753 F.2d at 1457. The government wholly failed to carry its burden. Our finding of disability is particularly appropriate here: Erickson is clearly unable to perform his previous job, is virtually unemployable because of his serious breathing

problems, and has been waiting for well over four years for his disability benefits.[10] Accordingly, we conclude that Erickson is disabled and is entitled to his benefits.[11]

### IV. CONCLUSION

We REVERSE the judgment of the district court. We find that Erickson is disabled within the meaning of the Social Security Act, and that he is entitled to disability benefits.

REVERSED AND REMANDED.

---

10. The Secretary does not contend that a sedentary work finding would preclude the awarding of disability benefits to Erickson. Accordingly, we need not consider this argument. In any event, for the reasons stated above, we find it highly doubtful that Erickson could perform even sedentary work. *See, e.g.,* discussion *supra* p. 819.

11. We reverse and remand to the district court. The district court is instructed to remand this case to the Department of Health and Human Services, which will then award Erickson the benefits to which he is entitled.