29 F.3d 631
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel W. COUCH, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent.
 No. 92-70574.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1994.
Decided July 11, 1994.
 
 1
 Before CANBY AND T.G. NELSON, Circuit Judges and SHUBB,** District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Daniel Couch appeals the Railroad Retirement Board's decision rejecting his claim that he is permanently disabled for all regular employment and is therefore qualified for a disability annuity under 45 U.S.C. Sec. 231(a)(1)(v). He argues that the hypothetical questions presented to the vocational expert by the hearing officer embodied inaccurate assumptions for several reasons. Among them are that the hearing officer inappropriately discounted Couch's own testimony concerning the degree of pain he experiences, the testimony of Couch's treating physician, and testimony that Couch has mental as well as physical disabilities. Couch also complains that the hearing officer told the vocational expert to assume that Couch was better educated than in fact he is. Finally, Couch contends that the record supports an award of benefits. We agree with Couch's contentions, and reverse and remand for an award of benefits.
 
 DISCUSSION
 
 4
 We will overturn a decision of the Board if it is not supported by substantial evidence, is arbitrary, or does not have a reasonable basis in law. Estes v. Railroad Retirement Board, 776 F.2d 1436, 1437 (9th Cir.1985). Because the Board affirmed in a summary order the decision of the hearing officer, we review the officer's decision as that of the Board. Here, we conclude that the Board's decision lacked a substantial basis because its hearing officer's assessment of the degree to which Couch is disabled is not supported by sufficiently detailed and specific findings, and the findings that were made are contradicted by the record in crucial particulars.
 
 I. Couch's Pain Testimony
 
 5
 The hearing officer concluded that Couch experiences only mild chronic pain; he discounted Couch's own reports of more extreme discomfort as lacking credibility. However, the officer failed to make specific, detailed findings, and to connect those findings to his rejection of Couch's testimony, as we require. See, Stewart v. Sullivan, 881 F.2d 740, 743 (9th Cir.1989).
 
 
 6
 For example, the officer noted that Couch has not sought treatment at a pain clinic, because "he desired coping with the pain on his own." The evidence, however, shows that Couch went to a pain clinic but failed to be admitted; it does not show that he never pursued the option. It is not clear whether the clinic refused to admit him or whether Couch chose not to pursue the option. More significantly, even if Couch refused treatment, the officer failed to explain why Couch's decision not to pursue the treatment was unreasonable. See, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) (failure to seek treatment, accompanied by finding that reasons for failure are not supportable, is ground to doubt claimant's pain testimony).
 
 
 7
 The officer's other comments, which are scattered throughout his decision and which we are willing to construe as findings that may be intended to impugn Couch's credibility as to his pain, similarly are inadequate.
 
 
 8
 The hearing officer stated that Couch takes pain medication only every other day. This finding is not supported by the record.[1] Moreover, Couch testified that he tries to take as little medication as possible because of its side effects. The officer should have made findings concerning the adequacy of this excuse before rejecting Couch's testimony. See, Fair, 885 F.2d at 603.
 
 
 9
 The hearing officer stated that Couch attributed his difficulty sleeping to the amount of sleep he gets during the day. Once again the officer's statement is not supported by the record. Couch testified that pain awakens him at night, which is why he takes Amitriptyline. There is no testimony that Couch's nighttime sleep problems are caused by his daytime naps.
 
 
 10
 The officer said that Couch's "recital of daily activities ... is not sufficiently clear to establish the extent to which daily activities are restricted." This statement hardly amounts to a finding that Couch's daily activities indicate that he can perform regular work. If the record is inadequate to support a finding concerning Couch's daily activities, that inadequacy cannot be converted into support for an affirmative conclusion that he is able to perform regular work. Cf. Fair, 885 F.2d at 603. Moreover, the hearing officer points to no instances of this alleged lack of clarity, and we find none. Couch testified that he spends up to 80% of his time lying on his back. This statement does not leave much of the day unaccounted for, and Couch testified that he takes short walks, talks to his cat, and eats. These activities are not sufficient to support a finding that Couch can perform regular work.
 
 
 11
 The hearing officer noted that two examining physicians challenged Couch's credibility. Again, this finding lacks sufficient specificity; it does not explain why these two physicians are to be believed rather than the other physicians who examined Couch, nor does it detail which of Couch's claims they doubted.
 
 
 12
 Finally, the hearing officer observed that Couch "testified clearly, and in no obvious pain." The hearing officer was entitled to consider Couch's demeanor during the hearing. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir.1991). But "[t]hat a claimant does not exhibit manifestations of pain at the hearing ... is, standing alone, insufficient to rebut a claim of pain." Fair, 885 F.2d at 602.
 
 II. The Treating Physician's Testimony
 
 13
 The hearing officer discounted Dr. White's testimony which indicated that Couch is totally disabled. Because Dr. White is Couch's treating physician, the officer was permitted to disregard his testimony only if the officer set forth specific, legitimate reasons that are based on substantial evidence in the record. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir.1989). "The [officer] can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.1988) (citation omitted). Once again, the findings are not sufficient and, in essential particulars, are contradicted by the record.
 
 
 14
 The hearing officer commented that Dr. White's letter "contains no specific findings to support his conclusions," comparing it to Dr. Powell's reports, which he states "are quite detailed in their findings." This comparison falls short of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, and making findings." Id. We also note that the officer "must give sufficient weight to the subjective aspects of a doctor's opinion. This is especially true when the opinion is that of the treating physician." Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir.1989) (citation omitted).
 
 
 15
 The officer also stated that White said that he "does not perform 'disability evaluations.' " White in fact stated that he does not routinely perform such evaluations. The hearing officer also recited that "no examining or treating physician in the appellant's case ever precluded all regular work, except for Dr. White." Again, that statement is not correct; Dr. Haffey also came to that conclusion.
 
 
 16
 In light of these deficient findings, and the contrary evidence of record, we conclude that the hearing officer was not justified in disregarding the evaluation of Couch's treating physician.
 
 III. The Psychiatric Testimony
 
 17
 Dr. Grubb and Dr. Haffey testified that Couch suffers from certain mental impairments.[2] Dr. Haffey, after extensive testing, found that these impairments precluded Couch from engaging in all regular work, when considered in light of his physical limitations. Although these opinions are uncontradicted, the hearing officer rejected them and failed to incorporate them into the hypotheticals he posed to the vocational expert. To reject these uncontradicted medical opinions, the officer was required to give clear and convincing reasons for doing so. See, Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984). He did not.
 
 
 18
 The hearing officer rejected Dr. Grubb's diagnosis of somatoform pain disorder because Dr. Grubb had not recommended psychiatric treatment and had noted that Couch is not very motivated. Yet the hearing officer failed to explain how these observations impugn the diagnosis and entitled him to ignore it in depicting Couch's condition for the vocational expert.
 
 
 19
 The officer rejected Dr. Haffey's opinion that Couch is totally disabled for regular work, explaining that "this was primarily based on chronic pain," and that he had already determined that Couch's pain testimony was not credible. Yet the officer pointed to nothing in Dr. Haffey's report to support this conclusion. In fact, the conclusion is insupportable. Even a cursory reading of Dr. Haffey's report reveals that his opinion is not based mainly on his assessment of Couch's pain. Furthermore, in a rebuttal affidavit, Dr. Haffey stated that pain did not provide the principal basis for his opinion, and the officer provides no reason to doubt him.
 
 IV. COUCH'S EDUCATION
 
 20
 Throughout the series of hypotheticals that the hearing officer posed to the vocational expert, he told her to consider a man with a tenth grade education. Couch, in fact, has only an eighth grade education. If a vocational expert's opinion is based on hypotheticals that are not supported by the record it has no evidentiary value. See, Embrey, 849 F.2d at 423. We need not decide whether this disparity in itself might warrant reversal; the other defects in the hearing officer's decision are sufficiently serious to support our decision.
 
 CONCLUSION
 
 21
 The hearing officer's findings are insufficiently thorough and detailed and are contradicted in several essential particulars by the record. These deficiencies were not remedied by the Board. Hence, the denial of benefits must be reversed. See, e.g., Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.1989); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir.1987). It is within our discretion either to remand for further proceedings, or to order an immediate award of benefits. Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.1990). Where the record is complete, and a review of the record as a whole reveals that there is insufficient evidence to support the hearing officer's decision, we generally reverse and award benefits because a rehearing would simply delay their receipt. See, e.g., Erickson v. Shalala, 9 F.3d 813, 819 (9th Cir.1993); Ramirez v. Shalala, 8 F.3d 1449, 1445 (9th Cir.1993); Penny v. Sullivan, 2 F.3d 953, 959 (9th Cir.1993). After a thorough review of the record, we conclude that this is an appropriate case for us to direct the award of benefits. The record is complete and the record does not support the hearing officer's rejection of the pain testimony. See, Varney v. Secretary of HHS, 859 F.2d 1396, 1401 (9th Cir.1988).
 
 
 22
 REVERSED AND REMANDED FOR AN AWARD OF BENEFITS.
 
 
 23
 Judge SHUBB dissents in part; he is of the view that the record does not justify our mandating an award of benefits, and he would remand for further administrative consideration of Couch's claim.
 
 
 
 *
 The Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Couch testified that he takes about 24 Tylenol with codeine pills per week. Because each tablet is supposed to last 8 hours, this rate of consumption works out to more than 3 tablets per day on average. Because Couch also testified that he sometimes takes more than the recommended dose, and sometimes skips taking medication altogether if he is having a "good day," it is possible for him to consume that much medicine and still take it only every other day. He testified, however, that he has fewer than one good day per week, and never has two good days in a row. The officer's finding is mathematically impossible
 
 
 [2]
 Many other physicians also have expressed concern over Couch's mental health since his injury. Dr. Norquist noted that Couch was "tearful and upset" and had mentioned suicide. Dr. Demakis recommended a psychological evaluation. Dr. Wandschneider referred Couch to a psychiatrist