**Jack FAIR, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services of the United States, Defendant–Appellee.**

**No. 88–1751.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1989.

Decided Sept. 13, 1989.

---

598

Dennis J. Mulshine, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before WIGGINS and KOZINSKI, Circuit Judges, and MARSH, District Judge.*

KOZINSKI, Circuit Judge:

Jack Fair suffers from a herniated disc, sciatic pain radiating into his thigh, arthritis in his back and nearly all major joints, headaches, obesity, gastric distress, hypertension, allergies, social isolation, anxiety, claustrophobia and insomnia. His application for Disability Insurance benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (1982 & Supp. V 1987), is the subject of this appeal.

## I

The factual and procedural history of this case are not atypical. Fair is a sixty-one year old man whose education ended after high school and three years of training in interior design. After four years of military service, Fair began a career of public employment which would last nearly thirty years. He spent the majority of this period working for the City and County of San Francisco: From 1962 to 1970 he collected coins from parking meters, work which required extensive walking and heavy lifting; and from 1970 to 1980 he worked as a tax investigator, a job he performed primarily while sitting at a desk. Since 1980, when the city placed him on disability retirement and began providing him with an aftertax pension of $712 per month, Fair has not been employed other than for a brief period in 1981. Fair has never married, has no children and lives alone.

This appeal concerns Fair's third application for Disability Insurance bene-

Frances L. Hancock, Hyatt Legal Services, San Francisco, Cal., for plaintiff-appellant.

---

* The Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation.

fits. He filed the first one in 1980, soon after he retired. His first application was denied by an Administrative Law Judge on May 19, 1981; Fair did not appeal. He filed a second application in 1982, which was denied by an ALJ on July 12, 1983. This decision was affirmed by the Appeals Council, and again by a district court. *Fair v. Heckler*, No. C–83–6044–CAL (N.D. Cal. Dec. 17, 1985). Although the doctrine of res judicata is not applied rigidly to disability determinations, *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir.1988), it applies here: Unless Fair seeks to reopen one of the prior determinations, he is precluded from claiming disability for the period before July 12, 1983. *See Green v. Heckler*, 803 F.2d 528, 530 (9th Cir.1986). Moreover, the earlier determinations create a presumption that Fair continues to be able to work; he thus bears the burden of proving that his condition has worsened since July 12, 1983. *See id.*

Fair filed his current application on July 31, 1984. He appeared, represented by counsel, before an ALJ on February 19, 1986. Fair testified as to his education and employment history, his medical condition, and his current daily activities. He explained that he suffers from headaches, for which he takes nonprescription medicine; back and shoulder pain, which is aggravated by bending and inclement weather, and which prevents him from walking for distances longer than a few city blocks; pain in his right leg so intense that it interferes with his ability to sleep and occasionally causes him to cease all activity; and a number of allergies, for which he takes a variety of medication. In response to questioning by the ALJ, Fair testified that he has been hospitalized for only one night since 1979, for a myelogram. He has pursued one two-week course of physical therapy in 1984. He is able to drive and take public transportation, and he cleans his own apartment.

Dr. David Bliss, Fair's treating physician, also testified at the hearing. Dr. Bliss, a specialist in internal medicine, has treated Fair since 1981. He described a 1981 x-ray of Fair's spine as showing degeneration consistent with Fair's complaints of pain. He explained that an attempt at physical therapy proved unsuccessful; that he has prescribed a number of different types of pain medication, none of which has relieved Fair's pain; that Fair's myelogram was normal, suggesting that surgery would be ineffective; and that Fair has not followed recommended exercise and physical therapy programs designed to reduce his weight and relieve his back pain. Dr. Bliss observed that Fair has consistently complained of pain over a period of five years, and that based on Fair's subjective complaints, he would be unable to perform sedentary work requiring him to sit in one position for longer than fifteen to thirty minutes.

The administrative record contains four medical reports in addition to that of Dr. Bliss. Three of these pertain solely to Fair's psychological condition. The fourth was contributed by Dr. William Ross, an orthopedist who conducted a consultative examination of Fair for his previous application; the report predates the period at issue, and is thus relevant only to Fair's burden of proving his condition has worsened since 1983. Dr. Ross notes Fair's complaints of back and leg pain, but arrives at no conclusion as to Fair's employability. The psychological reports split two to one against a finding of disability: Dr. Leonard Newman, a psychologist, concludes that Fair's "capacity for sustained concentration or sustained work effort of any type is inadequate for the general labor market," Administrative Transcript [Tr.] 328; while Dr. Ronald Johnson, a psychiatrist, finds no evidence of a major disorder, Tr. 307, and Dr. Lawrence Katz, a psychologist, concludes that Fair's emotional problems "do not appear to be particularly serious and should not preclude employment or even constitute much of an additional handicap in terms of his employability." Tr. 331–32.

The ALJ issued his decision on March 28, 1986. After reviewing the testimony of Fair and Dr. Bliss, and after considering each medical report, the ALJ determined that Fair is capable of returning to his past employment as a tax investigator, and is

accordingly ineligible to receive Disability Insurance benefits. *In re Fair*, No. 541–24–0650 (Mar. 28, 1986), at 8–9. To reach this conclusion, the ALJ had to take the two steps that constitute the main points of contention on appeal: First, the ALJ disbelieved Fair's allegations of pain and accordingly determined that Fair's pain does not preclude him from working. Second, the ALJ rejected Dr. Bliss's conclusion that Fair was disabled, finding it to be largely based on Fair's subjective complaints of pain rather than on objective medical findings that Fair's condition had deteriorated since his prior application.

The Appeals Council adopted the ALJ's decision as the final decision of the Secretary. Fair appealed; the district court granted the Secretary's motion for summary judgment. *Fair v. Bowen*, No. C–86–5961–CAL (N.D.Cal. Dec. 15, 1987). Fair appealed once more. We review the judgment of the district court de novo; we thus examine the decision of the Secretary to ensure that it is supported by substantial evidence and free of legal error. *Adams v. Bowen*, 872 F.2d 926, 927 (9th Cir.1989).

### II

Fair claims that the ALJ committed a number of errors. Only two of these allegations deserve extended discussion.

### A. Pain

Pain has been the subject of an unusually large number of our recent published Social Security opinions, and for good reason. Unlike most medical conditions capable of supporting a finding of disability, pain cannot be objectively verified or measured. While the physical conditions causing pain can usually be objectively ascertained, the pain itself cannot; the very existence of pain is a completely subjective phenomenon. So is the degree of pain: The amount of pain caused by a given physical impairment can vary greatly from individual to individual. To make matters more difficult, ordinary language permits the expression of only the most rudimentary distinctions among levels of pain: A claimant can testify that his leg hurts a little, or a lot, or somewhere in between, but such descriptions provide only a dim insight into the claimant's subjective experience of pain.

This case provides a good example. At the hearing before the ALJ, Fair's able attorney found herself with no method of conveying Fair's feelings of pain other than by asking him to rank them on a scale of one to ten; Fair's ranking ("at least 8 and sometimes as much as 10," Tr. 76) is of only marginal assistance to a decisionmaker whose own subjective one-to-ten scale may differ significantly.

But despite our inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working. Because pain is a subjective phenomenon, moreover, it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings. Referring to such pain as "excess pain," our cases have established a clear rule regarding its assessment: Once a claimant submits objective medical evidence establishing an impairment that could reasonably be expected to cause *some* pain,[1] "it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (per curiam). The rationale behind the rule is obvious: Excess pain is by definition pain at a level above that supported by medical findings; permitting the Secretary to disbelieve pain testimony merely because it is objectively unsupported would effectively permit him

---

1. This is a threshold requirement that cannot be overlooked. Our pain cases interpret a statute that provides: "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d)(5)(A) (Supp. V 1987). *See Swenson v. Sullivan*, 876 F.2d 683, 687 & n. 2 (9th Cir.1989)

to disregard altogether the phenomenon of excess pain, *id.*, and would therefore allow the Secretary to deny benefits to claimants whose pain in fact prevents them from working.

At the same time, the prospect of receiving disability benefits based on an ailment whose extent is objectively unverifiable provides a strong incentive to falsify or exaggerate a claim of pain. The ALJ's assessment of the claimant's credibility thus becomes exceptionally important in excess pain cases; unlike ordinary Social Security cases, which involve a weighing of medical evidence from a variety of sources, excess pain cases often hinge entirely on whether or not the claimant's description of what he is feeling is believed. In making this determination, the ALJ must walk a narrow path, as serious harm can flow from error in either direction. On one side, incorrect denials of benefits can leave deserving claimants, who are often in precarious financial conditions, without a crucial source of income. On the other, erroneous grants of benefits reward liars at public expense, waste resources that could be put to any number of more productive uses, and may ultimately reduce the level of funding available for people who are legitimately disabled.[2] The public interest is ill-served by either type of mistake.

Perhaps because of the difficulty in sorting true from false claims, or perhaps because of the sheer volume of cases incorporating claims of pain, a number of excess pain cases have come to us in recent years.[3] These cases have given us the opportunity to develop an intricate assortment of judicially-created rules.

█ In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir.1989); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.1989). These findings must enable the ALJ to " 'convincingly justify his rejection' of the claimant's excess pain testimony." *Stewart v. Sullivan*, 881 F.2d 740, 743 (9th Cir.1989) (quoting *Bellamy v. Secretary of Health & Human Servs.*, 755 F.2d 1380, 1382 (9th Cir.1985)). While it is not entirely clear what sorts of findings meet this requirement, *Varney v. Secretary of Health & Human Servs.*, 846 F.2d 581, 584 (9th Cir.1988), our cases provide a fair amount of guidance as to what sorts of findings do *not*. That a claimant does not exhibit manifestations of pain at the hearing before the ALJ is, standing alone, insufficient to rebut a claim of pain. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984). Neither may an ALJ rely on the claimant's failure to take pain medication where evidence suggests that the claimant had a good reason for not taking medication. *Id.* And, as we have repeatedly stated, the ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Stewart*, 881 F.2d at 743–44; *Hammock*, 879 F.2d at 502; *Varney*, 846 F.2d at 584; *Gamer v. Secretary of Health & Human Servs.*, 815 F.2d 1275, 1279 (9th Cir.1987); *Summers v. Bowen*, 813 F.2d 241, 242 (9th Cir.1987) (per curiam).

**2.** While this effect is unlikely in the short run, as payments of unmerited benefits are not likely to bankrupt the Social Security Administration in any given year, it is much less so in the long run. Assuming that political and economic pressures will prevent the federal social services budget from substantially expanding in the next few years, the rising cost of a government benefits program must be offset by either corresponding cuts in a different benefits program, more stringent eligibility requirements or reduced average payouts. Any of these will harm disabled claimants.

**3.** The growth in the number of excess pain cases may be a self-perpetuating phenomenon. As we decide more cases involving pain, the law regarding pain acquires more and finer refinements. The time lag between an ALJ's decision in a particular case and the day that case comes before us is often two years or longer; ALJs are thus often making excess pain determinations according to law that has been superseded by the time the cases are judicially reviewed. By continually shifting the target at which we ask ALJs to aim, *we no doubt make it harder for them to hit it.* The likelihood that an excess pain claimant will win reversal on appeal because the ALJ applied the wrong law accordingly increases, causing a corresponding increase in the number of excess pain cases appealed. And so on.

Our cases have been quite a bit more enigmatic as to what findings ·are sufficiently specific to discredit pain testimony.[4] On several occasions, we have affirmed denials of benefits where an ALJ has disbelieved allegations of excess pain, but we have never clearly explained why. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir.1988) (ALJs' comments "indicate they considered Copeland's credibility as well as medical evidence in making their decisions about Copeland's alleged disabling pain, in accordance with [the specific findings requirement]"); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir.1986) ("the administrative law judge made specific findings discounting appellant's claims of disabling levels of lower back pain"); *Green v. Heckler*, 803 F.2d 528, 532 (9th Cir.1986) ("[t]he ALJ thoroughly discussed the medical evidence in making his credibility finding"). These cases reiterate the requirement of "specific findings" and apparently discover them in the administrative record, without ever explaining what they are.

■ In trying to figure out what sorts of specific findings would be sufficient to discredit an allegation of pain, we can start with an unexceptionable proposition: An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). *See* n. 1 *supra.* This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment. The Disability Insurance and Supplemental Security Income programs are intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expand the class of recipients far beyond that contemplated by the statute. There must therefore be some types of evidence capable of being introduced at a hearing on which an ALJ can rely to find a pain allegation incredible.

One such type of evidence would be testimony about the claimant's daily activities. If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working. More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.

This line of reasoning clearly has its limits: The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, *see, e.g., Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir.1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic restricted travel); *Gallant*, 753 F.2d at 1453 (ordering award of benefits for constant back and leg pain despite claimant's ability to cook meals and wash dishes), and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.

Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. While there are any number of good reasons for not doing so, *see, e.g.,* 20 C.F.R. § 404.1530(c) (1988); *Gallant*, 753 F.2d at 1455, a claimant's failure to assert one, or a finding by the ALJ that the profferred reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.

■ While other sorts of evidence may also be capable of rebutting excess pain

---

4. *See Stewart*, 881 F.2d at 746 (Sneed, J., concurring) ("I am hard-pressed to describe what

showing the Secretary must make to refute an excess pain claim.").

testimony,[5] they are of no consequence here, because the ALJ determined that the two forms of evidence discussed above were inconsistent with Fair's allegations of disabling pain. *In re Fair*, No. 541–24–0650 (Mar. 28, 1986), at 3, 5, 7, 8. The ALJ made specific findings as to the following:

—Although Fair alleged "persistent and increasingly severe" pain and discomfort over a period of many years, "he denied having received more than rather minimal conservative treatment for his various complaints." *Id.* at 3.

—Fair "last received physical therapy for his back complaints approximately two years ago and has not been hospitalized for evaluation or treatment of any of his alleged symptoms since 1982, when he was hospitalized overnight for a myelogram." *Id.*

—Fair's treating physician "testified that although he had repeatedly advised the claimant to reduce his weight and undertake some form of exercise for relief of his low back and lower extremity symptoms, such recommendations have never been followed by the claimant. The claimant has never given any reasonable explanation for his refusal to follow his doctor's advice." *Id.* at 5.

—Although Fair asserted that he was "confined primarily to resting and reclining about his own home," he testified that "he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile." *Id.* at 3.

As a result of these findings, the ALJ concluded that Fair's allegations of disabling pain, in addition to being unsupported by objective medical evidence, were inconsistent with the weight of the nonmedical evidence. *Id.* at 8. The ALJ evidently reasoned along the lines sketched above: If Fair's pain is not severe enough to motivate him to seek treatment or follow his doctor's advice, and if Fair remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to his former job. While such reasoning may not hold up in all cases (there may be claimants with good reasons for not seeking treatment and credible explanations for their ability to work inside but not outside the home), it is sufficient here, as Fair has not put forward any evidence that reconciles the inconsistency between his words and his actions.

The ALJ used the limited tools at his disposal to evaluate the nonmedical evidence and found Fair's complaints of disabling pain not credible. He could easily have relied on other nonmedical evidence in the record to reach the opposite conclusion. Fair attempted to work in 1981, but testified that his pain forced him to stop. He testified that he is unable to walk more than the shortest distances, suffers from pain-induced fatigue that frequently forces him to stop what he is doing and lie down, and often has difficulty maintaining his balance. It may well be that a different judge, evaluating the same evidence, would have found Fair's allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir.1988). Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

**B. The Treating Physician**

■ The medical opinion of a treating physician is entitled to special weight. *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir.1988); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). When the ALJ

---

**5.** We see no reason why ordinary techniques of credibility evaluation should not be applied in SSA disability hearings. For example, if a claimant has a reputation as a liar, or has made prior statements inconsistent with his claim of pain, or is found to have been less than candid in other aspects of his testimony, that may be properly taken into account in determining whether or not his claim of disabling pain should be believed.

wishes to disregard the treating physician's opinion, "he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir.1986); *see also Magallanes,* 881 F.2d at 751; *McAllister v. Sullivan,* 880 F.2d 1086, 1089 (9th Cir.1989); *Rodriguez v. Bowen,* 876 F.2d 759, 761–62 (9th Cir.1989). Dr. Bliss, Fair's treating physician, testified that Fair is disabled; we must consider whether the ALJ's decision to the contrary meets these requirements.

Dr. Bliss submitted a letter concerning Fair and testified at the hearing. The letter concludes:

> According to the patient his symptomatology is such that he cannot walk greater than one block, stand for greater than ½ hour, or sit for greater than one hour without recurrence of the low back pain and symptoms of radiculopathy.
>
> It is unlikely that the patient's symptoms will improve significantly in the future and it would be my recommendation to restrict him to an occupation that did not require he exceed the activity limitations described previously.

Tr. 251. At the hearing, Dr. Bliss was questioned by Fair's attorney and by the ALJ. Each of the attorney's questions concerning Fair's employability presupposed the truth of Fair's complaints of excess pain:

> Q: And, based on the symptoms that you have observed and the complaints—the subjective complaints of this patient, do you believe that this patient could do sedentary work for a period of a regular business day of 8 hours?
>
> A: I think that he would be—he would have to be placed in a job where he would be able to move around quite frequently and have his lifting restricted to no more than 5 pounds.
>
> ....
>
> Q: Based on his subjective complaints and you're [sic] observations and clinical findings, do you have an opinion of the longest period of time that he could probably sit in one position without change?
>
> A: I would say 15 to 30 minutes.

Tr. 99. The ALJ recognized that Dr. Bliss' opinion was conditioned on acceptance of Fair's excess pain allegations, and asked Dr. Bliss to clarify that this was the case:

> Q: ... And assuming that all of his subjective complaints that he gave you, having to take them on face value, is that right—
>
> A: That's correct.
>
> Q: And given all of that—all of those things go into your opinion, is that right?
>
> A: That's correct.

Tr. 100.

██ Having decided to discredit Fair's excess pain testimony, the ALJ proceeded to assess Dr. Bliss' opinion. The ALJ first noted that Dr. Bliss' written submission was predicated upon a belief in the testimony the ALJ had just rejected: The ALJ observed that Dr. Bliss "recommended that the claimant be restricted to an occupation in the future which did not require the claimant to exceed his own description of his symptoms and limitations." *In re Fair* at 4. He then considered Dr. Bliss' oral testimony. The ALJ noted that "Dr. Bliss admitted that such assessment of the claimant's residual functional capacities was premised to a large extent upon the claimant's own accounts of his symptoms and limitations." *Id.* at 5. As the ALJ had already determined that this premise was faulty, he concluded: "[T]he opinion of the claimant's primary treating physician, Dr. Bliss, ... was acknowledged to have been based upon an uncritical acceptance of the claimant's own self serving accounts of his symptoms and limitations," and was therefore not worthy of credence. *Id.* at 7.

The ALJ thus disregarded Dr. Bliss' opinion because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician. *Brawner v. Secretary of Health & Human Servs.,* 839 F.2d 432, 433–34 (9th Cir.1988) (per curiam). The ALJ accordingly did not err in this regard.

C. Other Claims of Error

██ Fair's other claims of error are all without merit, and deserve only brief men-

tion. The district court did not err in failing to remand for consideration of new evidence; the 1986 Computed Tomography test, conducted nine months after the ALJ issued his decision, discloses nothing not already revealed by the 1981 x-ray report. Because the test is thus not material, remand is not required. 42 U.S.C. § 405(g) (1982); *Sanchez v. Secretary of Health & Human Servs.*, 812 F.2d 509, 511–12 (9th Cir.1987).

 Contrary to Fair's assertion, the ALJ did not rely too heavily on the report of Dr. Ross, the orthopedist who examined Fair for his previous application. The ALJ mentioned Dr. Ross' examination only in passing, *In re Fair* at 4, and apparently accorded it little or no weight. Neither did the ALJ fail to take Fair's nonexertional limitations into account, disregard Fair's statements as to the requirements of his former employment and his inability to perform them, or apply legal standards that violated Fair's due process rights. Whether or not the ALJ erred in finding Fair capable of lifting objects weighing 50 pounds is irrelevant given that Fair's employment as a tax investigator required him to lift no more than 15 pounds. Finally, the ALJ's decision is supported by substantial evidence.

### III

The Social Security Administration, an enormous organization responsible for a vast number of disability decisions each year,[6] no doubt makes its share of mistakes. This is not one of them. Fair has failed to carry his burden of proving that his condition has worsened since the denial of his previous application for disability benefits. The judgment of the district court granting the Secretary's motion for summary judgment is affirmed.

---

6. In 1986, almost 4.3 million people received nearly 12 billion dollars in SSI payments. United States Dep't of Commerce, Bureau of the Census, *Statistical Abstract of the United States 1988,* at 354.