56 F.3d 75
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Maria C. WRAY, Plaintiff-Appellant,
v.
Donna E. SHALALA, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 93-35552.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1995.
Decided May 19, 1995.
 
 Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Maria C. Wray appeals the judgment of the district court affirming the decision of the Secretary of Health and Human Services to deny Wray's application for Supplemental Security Income and Social Security Disability benefits. Wray argues that the ALJ's decision that she is not disabled is not based on substantial evidence, in that (1) the ALJ erred in discounting the conclusions of Wray's examining psychologist in favor of a nonexamining advisor who testified at the hearing; (2) the ALJ improperly discounted her pain testimony; (3) the Secretary failed to carry the burden of showing the existence of alternative jobs for Wray; and (4) the ALJ failed to consider adequately the combined effects of Wray's impairments. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Wray applied to receive Title II and XVI benefits on September 29, 1989, with a protective filing date of August 24, 1989. Wray alleged an onset date of February 1988, which is prior to her Title II "date last insured" of December 31, 1988. Thus, to obtain Title II benefits, Wray must show that she became disabled on or before December 31, 1988. To obtain Title XVI benefits, Wray must show at least twelve consecutive months of disability during the period between the filing date, August 24, 1989, and November 25, 1991, the date of the ALJ's decision.
 
 
 4
 Wray first argues that the Secretary improperly discounted the conclusions of Dr. Barnhart, the psychologist who examined her in 1990, in favor of the conclusions of Dr. Moulton, the consultative psychologist who testified at Wray's hearing because Moulton did not treat or directly examine her and his testimony therefore cannot be considered "substantial evidence." This overstates the rule, however; the ALJ may reject the examining expert's opinion in favor of a nonexamining expert's opinion even though the latter opinion is not based on independent clinical findings when he gives specific and legitimate reasons for doing so based on substantial evidence in the record as a whole. Andrews v. Shalala, No. 93-35599 (9th Cir. May 1, 1995), slip op. at 5045; Ramirez v. Shalala, 8 F.3d 1449, 1453 (9th Cir. 1993); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).
 
 
 5
 The ALJ did that here. Both Wray and Moulton testified at the hearing. Wray had not sought treatment and Barnhart was consulted only for the purpose of obtaining benefits. While Moulton did not examine Wray in a clinical setting, he had a more complete picture of her total medical condition than Barnhart because Moulton considered all of Wray's medical records whereas Barnhart had not. While Barnhart concluded that Wray suffered from "dysthymia" and suggested the possibility of "somatoform disorder" and "anxiety disorder" based only on his examination, based on Wray's full medical history, Moulton testified that "the claimant appears to have a long history of physical problems, primarily asthma and orthopedic problems with lower back and knee pain." He testified that Barnhart was unwarranted in his R/O anxiety disorder diagnosis because, in view of Wray's documented medical history, she "certainly [had] a legitimate worry about the physical conditions," and rejected Barnhart's R/O somatoform disorder diagnosis because of the "sufficient medical evidence for there being some physical problem present." Moulton further opined that "[e]ven to consider a somatoform pain disorder is not justified given the amount of evidence supporting some physical condition is [sic] present."[1] Thus, Moulton's opinion was "not contradicted by all other evidence in the record," Magallanes, 881 F.2d at 752, and the ALJ was entitled to consider it.
 
 
 6
 The ALJ explained that he adopted Moulton's opinion because it was consistent with the documentary and other evidence, including Wray's testimony. For example, in Moulton's opinion Barnhart's rating of Wray as "moderately limited" in her ability to carry out very short and simple instructions and set realistic goals or make plans independently should be changed to "not significantly limited" because of Wray's "self-reports of her significant activities of daily living, volunteer work, managing of money and her household planning." Also, Moulton assessed Wray as "moderately limited," not "markedly limited" as had Barnhart, in the ability to perform activities within a schedule, maintain regular attendance, and be punctual, because "the claimant's daily schedule of caring for her grandson, housework and library research, along with her social activities including the stamp club and genealogy society reflect that the claimant is not 'markedly limited' in this area." The ALJ explained the rating change from "markedly" to "moderately limited" in Wray's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms by citing Wray's own assessment of her symptoms at the hearing.
 
 
 7
 Thus, each of the changes in MRFC ratings adopted by the ALJ was adequately explained by the ALJ, and each was supported by substantial evidence in addition to the nonexamining expert's opinion. There is, accordingly, no basis for overturning the ALJ's decision. Andrews, slip op. at 5045.
 
 II
 
 8
 Wray contends that even though the ALJ did not find that she had no medically ascertainable pain, he improperly discounted her complaints of pain and fatigue and rejected her claim of excess pain. We disagree, as the ALJ made adequately specific findings supported by the record under Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991).
 
 
 9
 The ALJ cited the report of Dr. Larry Jackson, a treating physician, who stated that Wray's headaches occurred only once every three months or so, and her arm numbness only four times per year. Regarding Wray's level of pain generally, the ALJ cited Barnhart's report that she engaged in housework, cared for her grandchild, attended church and Genealogy Society meetings, used the library, and "otherwise engag[ed] in a normal schedule." He cited Wray's hearing testimony that she engages in social activity and in crocheting, as well as hobby activities such as sewing, painting, some gardening, and a stamp club. The ALJ found this activity "somewhat inconsistent with the claimant's allegations of disabling pain." The ALJ further explained that he observed no significant pain behavior at the hearing. He also cited the opinion of a treating physician, Dr. Watrous, that Wray was "capable of clerical work and moderate walking." Further, another treating physician, Dr. Levy, characterized Wray's neck and shoulder pain as merely "moderate." Although Wray had claimed to have angina, her cardiac cath was normal. The ALJ further stated that he did not find Wray to be "a fully credible witness nor is her functional capacity as restricted as she claimed."
 
 
 10
 Wray argues that contrary evidence suggests excess pain. However, our inquiry is not into whether the ALJ correctly resolved legitimate conflicts in the evidence but whether, considering the record as a whole, the ALJ's decision is supported by substantial evidence. "The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). Based on our evaluation of the entire record, the ALJ was entitled to rely on statements of Wray's physicians, and Wray's own testimony, to find that her pain is not as debilitating as she claims.
 
 
 11
 Wray argues that the ALJ failed to "explain how" her daily activities involved skills that are transferrable to the workplace as required by Bunnell. However, having specifically enumerated the activities that Wray's claimed pain did not prevent her from carrying out, the ALJ did not err by failing to say exactly how these activities would be used in a prospective job. Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989).
 
 
 12
 Wray also argues that the ALJ ignored her "somatoform disorder" as a basis for her pain. This contention fails as even Barnhart's diagnosis concluded only that a somatoform disorder could not be ruled out, not that it was present. In any event, the ALJ properly rejected the opinion in which that diagnosis had been made. Therefore, the ALJ did not err in discounting Wray's claims of excess pain.
 
 III
 
 13
 Wray next assigns error to the ALJ's determination that she was not disabled due to the availability of jobs other than those she performed in the past. "[O]nce the claimant demonstrates inability to return to past work because of medical disability, the burden shifts to the Secretary to show the claimant can perform substantial gainful work." Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).
 
 
 14
 Wray contends that the hypothetical that the ALJ used to elicit testimony from Arne, the vocational expert who testified at the hearing, was improper because it "totally excludes Dr. Barnhart's conclusions." For the reasons we have stated, it was not error to omit Barnhart's opinions from the hypothetical.
 
 
 15
 Wray next argues that the jobs cited are not consistent with her limited abilities to walk, sit for extended periods, or use her hands. However, the transcript makes clear that the ALJ and the vocational expert took into account these limitations:
 
 
 16
 ALJ: And I take it you're identifying only the sedentary [jobs] as applicable here?
 
 
 17
 VE: Yes, I am. And I, I believe that the job existence [sic] is such that she would be able at least on an hourly basis to stand up, move around a little bit, come back to the work station and continue to perform it.
 
 
 18
 The ALJ then modified the hypothetical to account for Wray's "manipulative problem," which affects use of her hands. Consequently, the physical limitations cited by Wray were considered in arriving at the proposed occupations. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1986) (ALJ properly considered claimant's need to alternatively sit and stand where vocational expert was made aware of limitation).
 
 
 19
 Wray next contends that, even if the telephone solicitor job is in fact suitable, the ALJ nevertheless erred because he failed to make findings concerning the number of such jobs that were available in Wray's locale. The vocational expert did not state how many of the 25,000 to 35,000 telephone solicitor positions existed in Wray's "region" of the country, nor did he identify "several other regions" of the country that possess these jobs in significant numbers. However, the statutes, 42 U.S.C. Secs. 423(d)(2), 1382c(a)(3)(B), and regulations, 20 C.F.R. Secs. 404.1566(b), 416.966(a), simply insure that a claimant is not regarded as able to work because she possesses the capacity only to do jobs for which there is little realistic chance of employment: obscure and highly unusual jobs, or those that are not reasonably distributed throughout the nation but that exist, even if in significant numbers, only in one special region of the country. The statute does not require a finding of disability if the claimant can show she might be required to relocate to gain employment. There is nothing about the telephone solicitor job that suggests it would only be available in limited locations. Wray offers no authority requiring that the ALJ make a finding of number of jobs available in the claimant's region, and the plain language of the statutes and regulations suggests no such requirement.
 
 
 20
 Wray next argues that the telephone solicitor job is inappropriate because the Secretary did not show that Wray had skills in mathematics, grammar, communication and computers. However, Wray does not contest the ALJ's findings that she has a high school education and two years of college, or that she is literate. The telephone solicitor job is classified as semi-skilled; under HHS regulations, a person with a "high school education and above" is generally considered to be able to "do semi-skilled through skilled work." 20 C.F.R. Sec. 416.964(b)(4).
 
 IV
 
 21
 Wray finally asserts that the ALJ erred in failing to give adequate consideration to the combined effects of her impairments as required under the regulations, 20 C.F.R. Sec. 416.923, and Beecher v. Heckler, 756 F.2d 693, 694 (9th Cir. 1985).
 
 
 22
 In setting out the hypothetical for the vocational expert, the ALJ listed Wray's physical infirmities and also cited Moulton's testimony as to mental residual functional capacity limitations. The discussion concerning alternative occupations with the vocational expert was premised on a profile that included both physical and psychological elements. After Wray's counsel questioned Arne concerning the main areas in Wray's psychological diagnosis upon which Barnhart and Moulton differed, the ALJ expressly acknowledged the "combination" issue, stating that it would be "difficult" for him. The ALJ made a specific finding that Wray's limitations, singly or in combination, did not render her disabled. This complies with Beecher, and the ALJ did not err by failing to consider Wray's limitations in combination.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 At oral argument, counsel for Wray asserted that Moulton stated no inconsistency or disagreement with Barnhart's clinical findings, methodology or investigation, but simply stated that on that same evidence he disagreed with Barnhart's conclusions regarding residual functional capacity. We do not agree with that characterization of the record. It is clear from the hearing transcript that Moulton believed that Barnhart's lack of access to Wray's physical medical history undermined the accuracy of Barnhart's psychological diagnosis