106 F.3d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alford OSBORN, Plaintiff-Appellant,
v.
COMMISSIONER OF the SOCIAL SECURITY ADMINISTRATION,
Defendant-Appellee.
 No. 95-35870.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 10, 1997.*
Decided Jan. 14, 1997.
 
 Before: ALDISERT,** PREGERSON, and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 The parties are familiar with the facts of this case, and we will not restate them here. There are two issues presented in this appeal: (1) whether the Administrative Law Judge (ALJ) improperly discredited Osborn's pain testimony because Osborn failed to follow treatment prescribed by his physician and (2) whether the ALJ erred in concluding that Osborn could perform past jobs or, alternatively, other jobs in the national economy.
 
 
 3
 We review a district court's order upholding the Commissioner's denial of benefits de novo. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir.1996). Our scope of appellate review, however, is limited: we must affirm the Commissioner's decision if substantial evidence supports that decision and the Commissioner applied the correct legal standards. Id. After a thorough examination of the record and the briefs, we affirm the decision of the district court.
 
 
 4
 The ALJ's Evaluation of Osborn's Pain Testimony
 
 
 5
 Because pain testimony is inherently subjective, an ALJ faces a difficult task in determining if a claimant's pain precludes him from employment activities. More than other areas of disability claims, the ALJ's assessment of the claimant's credibility regarding his pain testimony is exceptionally important. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). And, as we have consistently held: "Credibility determinations are the province of the ALJ. Where ... the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." Id.
 
 
 6
 In order to reject pain testimony, the ALJ must make findings "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.1995). There are numerous factors that the ALJ may consider when determining credibility, including, among other things:
 
 
 7
 (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;
 
 
 8
 (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and
 
 
 9
 (3) the claimant's daily activities.
 
 
 10
 Smolen, 80 F.3d at 1284; see also Orteza, 50 F.3d at 750; Fair, 885 F.2d at 603.
 
 
 11
 In rejecting Osborn's testimony, the ALJ set forth a number of specific findings. First, the ALJ noted that Osborn had "severe impairments," both mental and physical. He concluded, however, that these impairments did not exclude Osborn from all work situations. The ALJ noted an examining physician's findings that Osborn: (1) could lift and carry a maximum of 25 pounds and that he could easily lift 10 to 15 pounds; (2) had no sitting limitations; (3) could stand for 1-2 hours at a time; (4) could perform standing activities for 6 hours out of an 8 hour day with appropriate rest periods; (5) could walk for 1-1 1/2 hours at a time; (6) could walk for 4-6 hours within an 8 hour day; and (7) had unlimited use of his hands.
 
 
 12
 The ALJ's second stated reason for rejecting Osborn's pain testimony was Osborn's failure to follow prescribed treatment. He noted: "The evidence ... shows that the claimant has had poor compliance with any regimen that has been recommended for him to alleviate any symptoms stemming from the diabetes. He has not been ready to exercise or to follow diet plans." This conclusion corresponded to the findings of Dr. Van Veen, Osborn's treating physician:
 
 
 13
 He does not exercise regularly. In fact doesn't have any exercise program at all.... Often arises about 10 in the morning and the usual breakfast is bacon and eggs. Hasn't followed a diet for a long time.... And I get the impression that he is not interested in doing a whole lot to make changes to manage his disease. He does not seem all that interested in exercise or diet management.
 
 
 14
 Dr. Van Veen also noted that Osborn smoked one or two packs of cigarettes per day with no intention of quitting.
 
 
 15
 This Circuit has consistently held that an ALJ, in determining credibility, may consider a claimant's failure to follow prescribed treatment. See Smolen, 80 F.3d at 1283; Fair, 885 F.2d at 603; see also 20 C.F.R. § 404.1530.
 
 
 16
 There is no evidence to indicate that Osborn is incapable of changing his habits. Although an examining psychologist found that Osborn "would have difficulty remembering and carrying out simple instructions at times," there is nothing to indicate that Osborn's mental impairments prevent him from making certain lifestyle changes. Indeed, Osborn testified at the hearing that he was testing his blood daily to measure the level of blood sugar. His mother testified that Osborn is able to follow directions when she gives him chores. Certainly if Osborn is able to test his blood sugar and follow directions from his mother in completing certain chores, he is able to remember (1) not to smoke, (2) to exercise, and (3) to maintain his diet. There is no evidence to suggest that he cannot; rather, as Dr. Van Veen pointed out, it seems that he is "not interested" in doing so.
 
 
 17
 With respect to Osborn's other medical complaints, the ALJ noted that Osborn's "pain complaints are not convincing because he uses only non-prescriptive medications to alleviate the alleged pain." As stated above, this Court has held that an unexplained failure to seek treatment may weigh against a claimant's credibility that he cannot work due to pain. Smolen, 80 F.3d at 1284. The ALJ is correct in his conclusion that Osborn would probably seek stronger pain medication if his pain were truly severe.
 
 
 18
 Finally, the ALJ noted the testimony of Osborn's mother that Osborn was capable of doing his own chores. Other evidence in the record indicates Osborn sometimes does perform household chores, and Osborn indicated to his physician that he had the ability to chop and stack wood for approximately 30 minutes before symptoms become limiting. The ALJ may consider a claimant's daily activities when assessing the credibility of pain testimony. Smolen, 80 F.3d at 1284. In sum, the ALJ's decision to discredit Osborn's pain testimony is supported by substantial evidence.
 
 
 19
 Osborn's Ability to Perform Previous Jobs and/or Other Jobs
 
 
 20
 In determining whether a claimant is eligible for disability benefits, the ALJ must determine whether the claimant can do his previous job. 20 C.F.R. § 404.1520(e). If a claimant can do past relevant work, the Social Security Administration will not consider him disabled, and the ALJ need not proceed to the next step of the disability evaluation to determine whether the claimant can perform other work. Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996).
 
 
 21
 Osborn's argument that the ALJ erred in determining that he was capable of doing other work is thus misplaced: Because the ALJ correctly determined that Osborn could perform his past work as a cannery worker, the ALJ's determination that Osborn could do other work was actually superfluous.
 
 
 22
 The ALJ determined that Osborn "is capable of a light level of physical exertion with additional mental restrictions." He then concluded that Osborn is "capable of returning to his past job as a cannery worker." As noted above, reports of examining physicians support these conclusions.
 
 
 23
 The ALJ's determination that Osborn could perform a job with "additional mental restrictions" is also supported by the record. In concluding that Osborn had "severe impairments," the ALJ noted Osborn's organic mental disorder and mild retardation. However, the record does not indicate that Osborn's mental impairments prevent him from doing any work at all. Indeed, Osborn has past job experience as a cannery worker, a bus washer, and a service station attendant. He testified that he lost his cannery job not because he could not do it, but rather because sickness frequently caused him to be absent. The ALJ correctly found that Osborn could return to his previous job.
 
 
 24
 For the above reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3