**Kathryn M. RHODES, Plaintiff–Appellant,**

v.

**Larry G. MASSANARI, Acting Commissioner of the Social Security Administration,[1] Defendant–Appellee.**

No. 98–36226.

D.C. No. CV–97–00293–LMB.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 15, 2000[2].

Decided April 23, 2001.

---

**1.** Larry G. Massanari, Acting Commissioner of Social Security, is substituted as the defendant-appellee, in place of Kenneth S. Apfel, pursuant to Fed. R.App. P. 43(c)(1).

**2.** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Before REAVLEY,[3] FERNANDEZ and THOMAS, Circuit Judges.

## MEMORANDUM[4]

Kathryn Rhodes appeals the district court's denial of a petition for review from the final decision of the Commissioner of the Social Security Administration denying Rhodes' social security disability claim. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand for further proceedings. Because the parties are familiar with the factual and procedural background of this case, we will not recount it here.

■ 1. An administrative law judge ("ALJ") is entitled to reject a petitioner's testimony if he or she provides "specific, clear and convincing reasons." *Smolen v.*

*Chater,* 80 F.3d 1273, 1281 (9th Cir.1996). Here, the ALJ rejected Rhodes' testimony concerning her symptoms. The only rationale given was that the testimony "was not supported by the evidence as a whole"—specifically, it was not supported by Dr. Moore's assessment and by Rhodes' disability report of March 26, 1994. However, the daily activities listed in Rhodes' disability report do not conflict with her testimony of neck pain because the ability and desire to perform some daily activities does not negate a finding of disability, particularly when the activities are not substantial ones that can be transferable to a work environment. *See Smolen,* 80 F.3d at 1284 n. 7; *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). In addition, the ALJ's dismissal of Rhodes' arm restrictions because of his dismissal of the right shoulder impingement syndrome is questionable given the post–1989 records that document this limitation.[5] In short, the ALJ did not offer clear and convincing reasons for rejecting Rhodes' testimony.

■ Further, we cannot discern the basis for the ALJ crediting some medical opinions over others, or why the ALJ partially relied on and partially rejected medical opinions from the same health care provider. We also note that an ALJ should give greater weight to the opinion of the treating physician, and may reject it only after giving "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Ramirez v. Shalala,* 8 F.3d 1449, 1453 (9th Cir.

---

**3.** The Honorable Thomas M. Reavley, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

**4.** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

**5.** For example, Dr. O'Brien's 1989 report noted the possibility of an "irritated nerve syn-

drome down the right arm." Dr. Matthes noted "arm pain." Roy Kjorlien noted "restricted extension" and "upper arm pain." Indeed, medical reports from Dr. O'Brien, Dr. Matthes, Roy Kjorilien, and Dr. Mulick all refer to her cervical strain, sprain, pain or discomfort, and they attribute it to her TMJ syndrome (which the ALJ found was "severe").

1993). The ALJ's decision does not provide "specific, legitimate reasons" for rejecting the treating physician's opinion in the instances the ALJ chose to do so.

For these reasons, remand is required.

3. On remand, the ALJ should also reconsider the testimony of the vocational expert. If the ALJ alters his conclusions about the medical evidence, then different hypothetical assumptions will be required.[6]

4. By vacating and remanding, we are not expressing any opinion on the merits of this case.

REVERSED AND REMANDED TO THE DISTRICT COURT WITH INSTRUCTIONS TO REMAND TO THE COMMISSIONER FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS DISPOSITION

---

**6.** In addition, it appears that the vocational expert deviated from the Dictionary of Occupational Titles without explanation by testifying Rhodes could only perform sedentary work, but opining as to jobs that required light work. Further, the ultimate conclusion that Rhodes could serve as a parking lot attendant or fruit sorter, is contradictory to the medical report issued April 15, 1997 by Dr. Wade.