**Joseph W. PANOZZO, Plaintiff— Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner, Defendant—Appellee.**

No. 02–15031.

D.C. No. CV–00–01577–VAM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2003.

Decided March 4, 2003.

---

Before BEEZER, THOMAS and CLIFTON, Circuit Judges.

MEMORANDUM *

Claimant–Appellant Joseph Panozzo appeals from the district court's grant of summary judgment to the Commissioner of Social Security, denying disability insurance benefits under Title II of the Social Security Act. Because the parties are familiar with the facts, we do not recite them unless necessary. We reverse and remand for award of benefits.

We have long assessed disability-benefit eligibility under a five-part test. *See, e.g., Bustamante v. Massanari,* 262 F.3d 949, 953–54 (9th Cir.2001); 20 C.F.R. § 404.1520(f). Both sides agree that the dispute arises at step five of the five-step test, where the burden has shifted to the Commissioner to show that Panozzo has the residual functional capacity to perform some other substantial gainful activity on a "regular and continuing basis." *Id.* During Panozzo's disability hearing, the Commissioner's vocational expert acknowledged that there would be no full-time jobs for someone with all of Panozzo's attributes if extended rest breaks were needed. Panozzo testified that he needed extended rest breaks, but the ALJ rejected Panozzo's testimony. This rejection of Panozzo's subjective pain testimony was not in accord with the legal standard for discrediting claimant testimony when there is no

affirmative evidence of malingering. "Once a claimant produces medical evidence of an underlying impairment [as Panozzo has], the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir.1991) (*en banc*)). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *see also Smolen v. Chater,* 80 F.3d 1273, 1283–84 (9th Cir.1996). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834.

Here, the ALJ, citing SSR 96–7p, made one finding suggesting malingering and several findings suggesting lack of credibility as to symptom severity. In the end, none are supported by the record.

*First,* the ALJ suggested Panozzo was malingering because his "use of the cane for support defies credulity. There is no impairment of the lower extremities or spine which would warrant any need for an assistive device...." That was not true. Panozzo had back problems, supported in the record by x-rays and Dr. Phillips's cervical spondylosis diagnosis. Moreover, Panozzo testified that he "use[d] [the cane] everyday for support and especially when [he] get[s] so tight that [the pain] goes down [his] back, the muscles tighten up down into [his] back and when it gets [t]o his hips it's like a clamp pulling [him]

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

forward." ER 117. Based on the record, Panozzo's use of a cane was not affirmative evidence of malingering.

*Second,* the ALJ noted Panozzo's medical treatment was "routine, conservative and infrequent." But the ALJ did not suggest what further treatment would be appropriate. Panozzo has been seen by many doctors since 1992, and had at least 15 visits in the 1994–1998 period. It appears he followed his treating physician's advice to see him every three to six months; he saw Dr. Phillips at least 9 times from January 1995 through 1997. *See Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1296 (9th Cir.1999) ("Particularly because none of the many physicians Regennitter has seen has suggested effective treatment for his pain, the amount of medical treatment Regennitter has received is not necessarily inconsistent with his complaints.").

*Third,* the ALJ noted, "he testified that he washes dishes, drives an automobile, prunes rose bushes, and goes grocery shopping with his wife." But these findings are somewhat misleading. Panozzo testified that he did no housework at all. ER 117. He said that he helped his wife with the dishes. ER 118. He said he did not do any sweeping. *Id.* When asked if he did "any yard work," he responded, "I try to do a little pruning on rose bushes, little bushes that I have at the house when I'm capable of doing so." *Id.* As for shopping, Panozzo noted that he did some but qualified this admission by stating he goes for a "half hour" and his wife "does the heavy shopping by herself." *Id.* With regard to driving, Panozzo said he gets "all tight and cramped up" after even a "half hour" period. ER 120. These activities are not inconsistent with Panozzo's claimed need to rest during the day. "Only if the level of activity were inconsistent with Claimant's claimed limitations would these

activities have any bearing on Claimant's credibility." *Reddick,* 157 F.3d at 722.

In sum, none of the ALJ's findings detract from Panozzo's credibility on his need to rest. Because the Commissioner failed to meet her burden of showing Panozzo had the residual functional capacity to work full-time, and the record is fully developed, we reverse and remand for award of benefits.

REVERSED AND REMANDED.

BEEZER, Circuit Judge, dissenting.

When an ALJ's decision is supported by substantial evidence and is not based on legal error, it should not be disturbed. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989). The district court's grant of summary judgment for the Commissioner of Social Security was correct and should be affirmed.

The ALJ is responsible for making credibility determinations. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). If there is no affirmative evidence of malingering, the ALJ must present clear and convincing reasons for rejecting a claimant's testimony. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). In this case there was both affirmative evidence of malingering and additional clear and convincing reasons for rejecting Panozzo's testimony.

The opinion of the court recognizes that the ALJ's determination that Panozzo uses a cane without any medical reason would be evidence of malingering, if supported by the record. The ALJ based its conclusion on Dr. Rand's 1995 report, which found that Panozzo's cervical spine had a full, active range of motion and did not discuss any lower extremity impairment. Dr. Rand noted that Panozzo purported to use a cane for balance, but did not note any medical need for a cane. Dr. Rand concluded in 1998 that Panozzo walked with-

out a limp or list, could move around without a problem, and was essentially the same as when Dr. Rand saw Panozzo in 1995. Although the opinion of the court points to other evidence that Panozzo had a back problem, the ALJ's determination to the contrary was based on substantial objective evidence. This is affirmative evidence of malingering.

In addition, the ALJ considered other factors that undermined Panozzo's credibility. Adhering to the guidelines in Social Security Ruling 96–7p ("SSR 96–7p") the ALJ considered:

(1) Panozzo's daily activities;[1]

(2) the supposed side effects of Panozzo's medication;[2] and

(3) the infrequency of Panozzo's treatment compared with the level of his complaints.[3]

The ALJ followed SSR 96–7p closely. The ALJ recognized that although Panozzo claimed serious disability, his level of daily activity was fairly high. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[I]f, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). Panozzo washed dishes, pruned rose bushes, cooked meals, operated a motor vehicle and attended to grocery shopping. Although Panozzo admittedly had some limitations in these activities, the ALJ appropriately recognized the inconsistency in Panozzo's activity level compared to Panozzo's claim that he was totally disabled in occupations for which he was qualified.

The ALJ also presented clear and convincing reasons for rejecting Panozzo's testimony that Panozzo needed to lie down for 3–4 hours each work day because of drowsiness from his medication. The ALJ observed that if Panozzo had adverse side-effects from his medications, he could be expected to have his medication regimen adjusted or changed to ameliorate the alleged side-effects. Panozzo's claims were less credible because there was no evidence that Panozzo had raised serious fatigue concerns with his physician since 1997, even though Panozzo claimed that the symptom continued to present.

The ALJ further recognized the inconsistency between Panozzo's routine treatment regime and Panozzo's subjective complaints. The ALJ stated that although Panozzo complains of chronic neck and left shoulder pain, Panozzo's medical treatment since his final surgery in October 1993 had been routine, conservative and infrequent given Panozzo's level of claimed pain and discomfort. Although the opinion of the court claims that fifteen doctors visits between 1994 and 1998 is not conservative, an average of only three doctors visits a year is routine and inconsistent with claims of debilitating and constant pain. By 1997, Dr. Philips, the treating physician, was recommending that Panozzo continue with his medications and return for doctor visits every six months.

---

1. "[T]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements ... The individual's daily activities...."

2. "[T]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements ... The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms...."

3. "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints...."

We are not triers of fact. The ALJ is the trier of fact. The ALJ made specific findings justifying his decision to disbelieve Panozzo's testimony of extreme symptoms. Those findings are supported by substantial evidence in the record. In this case, "our role is not to second-guess that decision." *Fair*, 885 F.2d at 604.

Because the ALJ did not commit legal error and the ALJ decision is supported by substantial evidence, I would affirm the district court.